## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In re:                                        Chapter 11
                                              Case No. HG 09-06914
      SUREFIL, LLC,
                                              JOINTLY ADMINISTERED
          Debtor.
_____

In re:
                                              Case No. HG 09-06916
      SUREFIL PROPERTIES, LLC

          Debtor.
_____

## PROSYS, LLC AND PROCESS RESULTS, INC.'S
## MOTION FOR RELIEF FROM AUTOMATIC STAY

NOW COME Process Results, Inc. ("Process Results") and PROSYS, LLC ("PROSYS"), by their attorneys, Kerr, Russell and Weber, PLC, and for their Motion for Relief from the Automatic Stay in each of the above-referenced jointly administered cases, state as follows:

1. Process Results and PROSYS seek relief from the automatic stay under 11 U.S.C. § 362(d) and L.B.R. 9013 (W.D.M.) and request that the Court lift the automatic stay to permit the continuation and conclusion of the action currently pending in the Circuit Court for the County of Kent in the State of Michigan entitled *PROSYS, LLC, a Michigan limited liability company and Process Results, Inc., a Michigan corporation, v. Surefil, LLC, a Michigan limited liability company, Surefil Properties, LLC, a Michigan limited liability company, and The Huntington National Bank*, Kent County Circuit Court Case No. 07-07828-CK (the "Kent Circuit Action").

2. For the reasons set forth in the Brief in Support of Motion for Relief from Automatic Stay and exhibits, incorporated into this Motion as if fully restated herein, cause

exists to lift or modify the automatic stay to permit the Kent County Circuit Court to complete an adjudication of the Kent Circuit Action.

      3.  Fed. R. Bankr. P. 4001(a)(3) permits the Court to eliminate the 10-day stay of an order granting a motion for relief from the stay.   In this case, for the reasons set forth in the Brief, cause exists to eliminate the 10-day stay so that the Kent Circuit Action may immediately resume.

      4.  A copy of a proposed Order Granting Motion for Relief from Automatic Stay is attached as Exhibit A.

      5.  Process Results and PROSYS have served this Motion upon all parties required to be served by Fed. R. Bankr. P. 4001.

      WHEREFORE, for the reasons set forth in the attached Brief in Support of Motion for Relief from Automatic Stay, Process Results and PROSYS respectfully request that this Court (a) grant their Motion for Relief from Automatic Stay to permit the completion of the Kent Circuit Action, (b) order that the results of the Kent Circuit Action become binding in these proceedings, (c) eliminate the 10-day stay under Fed. R. Bankr. P. 4001(a)(3)  and (d) grant such other relief as is just and equitable.

Dated:  September 16, 2009

/s/ Jason W. Bank
Mark M. Cunningham (P38408)
Jason W. Bank (P54447)
**KERR, RUSSELL AND WEBER, PLC**
Attorneys for PROSYS, LLC and
PROCESS RESULTS, INC.
500 Woodward Avenue, Suite 2500
Detroit, MI  48226-3406
313-961-0200; 313-963-7099 (facsimile)
mmc@krwlaw.com
jwb@krwlaw.com

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re:<br><br>    SUREFIL, LLC,<br><br>        Debtor. | Chapter 11<br>Case No. HG 09-06914<br><br>JOINTLY ADMINISTERED |
| In re:<br><br>    SUREFIL PROPERTIES, LLC<br><br>        Debtor. | Case No. HG 09-06916 |

## PROSYS, LLC AND PROCESS RESULTS, INC.'S BRIEF IN SUPPORT OF THEIR MOTION FOR RELIEF FROM AUTOMATIC STAY

### INTRODUCTION

Process Results, Inc. ("Process Results") and PROSYS, LLC ("PROSYS") seek relief from the automatic stay to conclude a pending civil action against Debtors Surefil, LLC ("Surefil") and Surefil Properties, LLC ("Surefil Properties"). In the civil action, which is pending in Kent County Circuit Court, Process Results and PROSYS seek to recover amounts owed to them for, respectively, engineering and design services and materials provided in connection with the design and construction of the facility where Surefil and Surefil Properties currently do business.

Process Results and PROSYS have a first secured interest in the real property and improvements located on Danvers Drive in Kentwood, owned and operated by Surefil and Surefil Properties, which is also where they conduct their business.

In the Kent County Circuit Court civil action, PROSYS and Process Results seek to recover a combined amount of over $700,000.00 and seek foreclosure of their construction liens together with an award of attorney fees incurred in connection with their efforts to collect and

foreclose.   The action began in 2007 and, when Surefil and Surefil Properties filed for bankruptcy protection had proceeded through eight days of a bench trial and three days of de bene esse video depositions which were to be turned over to the court as the final testimony in the case.   With two to eight hours of de bene esse video depositions remaining to conclude the trial, these bankruptcy proceedings were filed.   Surefil and Surefil Properties, by their own admission, had incurred well over $500,000.00 in attorney fees in connection with the civil action when the bankruptcy was filed, and PROSYS and Process Results had incurred over $360,000 in costs and attorney fees.

Because the amounts owed and the liens and secured interests of PROSYS and Process Results remain at issue in these proceedings, for the reasons set forth herein PROSYS and Process Results seek relief from the automatic stay to conclude the civil action in Kent County Circuit Court and obtain a final decision on all issues relating to the amounts owed by Surefil and Surefil Properties and foreclosure of their construction liens.

In the event the relief sought is not granted, most of the fees already incurred will be incurred a second time, to the detriment of other creditors, the bankruptcy estate and PROSYS and Process Results.   In addition, because PROSYS and Process Results, as lien claimants are entitled to recover their attorney fees and costs pursuant to the Michigan Construction Lien Act, MCL §570.1101, the loss to Surefil and Surefil Properties in that respect, as well as their creditors, will be doubled.

## STATEMENT OF FACTS

### The Process Results claims against Surefil and Surefil Properties

Debtors Surefil and Surefil Properties are the owners and/or operators of a bottling and packaging facility located at 4560 Danvers Drive, S.E. in Kentwood, Michigan.   Beginning in

2004 or 2005, Surefil and Surefil Properties sought assistance from the Michigan Economic Development Corporation ("MEDC") to obtain financing with which they intended to design and construct that bottling facility.

In 2005, Surefil entered into a contract with Process Results, a Michigan corporation, an engineering firm which specializes in process engineering.

Process engineering is the engineering work associated with a process (typically manufacturing) which takes place within a facility. Surefil required process engineering services because it wanted to construct a mixing and bottling facility in an existing warehouse located in Kentwood, Michigan. In particular, Surefil wanted to establish a facility which could mix and bottle personal care products, most specifically, shampoo and conditioner.

Pursuant to its contract with Surefil, Process Results was to perform engineering work as well as construction administration in connection with the build out of the existing warehouse and the installation of a mixing and bottling facility.

Surefil's original contract with Process Results required Surefil to pay Process Results $350,000 in cash for the services performed under the contract and to provide Process Results with an option to purchase a 4.5% equity interest in Surefil. Surefil agreed to provide Process Results with a $40,000 interest free loan to pay for the option. Pursuant to the contract, Process Results was to be paid additional compensation if project costs exceeded $3.2 to $3.4 million. Surefil also agreed to pay Process Results one and one-half percent per month on all unpaid invoice amounts.

While Process Results was to perform the engineering and design work for the project, Surefil was also required to enter into a contract with a general contractor to construct the

project.  Surefil entered into a construction agreement with Ebels Construction which, in turn, subcontracted various portions of its work including electrical, mechanical and other trade work.

As originally contemplated by the contract between Surefil and Process Results, design work for the Surefil facility was to take place in late December 2005 and continue until approximately March of 2006, at which point the first construction on the building itself would begin to take place.   However, soon after the contract was entered into, in early to mid-December, Surefil, without consulting with Process Results, hired a contractor and ordered the contractor to begin work on the facility.  Thereafter, Surefil demanded expedited design, engineering and construction work until, in mid-March of 2006, it demanded that it be allowed to begin bottling shampoo in its plant even while construction and installation on the facility continued.

Although the demands by Surefil appeared impossible to accomplish, by placing engineers on site virtually around the clock, for seven days per week, while contractors placed personnel on site under similar circumstances, Process Results was able to provide a facility to Surefil which bottled shampoo by early April of 2006, at great cost to Process Results.

During the course of Process Results' performance of nearly impossible demands by Surefil, Surefil's owner, Bill Hunt, consistently interfered with and caused substantial impacts to Process Results' work.

Despite all of the interferences, unreasonable demands, and requests for additional and different work by Surefil, Process Results completed its work on schedule and the Surefil plant was operational and completed earlier than the scheduled completion date.

Despite all of the foregoing, Surefil paid Process Results a total of $50,000 on its contract.  The remaining unpaid balance of the original base contract is $300,000.  During the

course of the project, Surefil requested, and Process Results provided, computer programming for the programs which operate the Surefil facility. Likewise, Surefil failed and refused to pay for the programming in the amount of $34,600 and also failed to pay the amounts owed for additional engineering work in the amount of $75,027. Pursuant to Surefil's contract with Process Results, Process Results is entitled to service charges at the rate of one and one-half percent per month on unpaid invoices. Those service charges total $203,914.25 as of April of 2009 and have continued to accrue.

Not surprisingly, Surefil also failed and refused to provide Process Results with the option to purchase a 4.5% equity ownership of Surefil. That option was to be payment for $150,000 of the Process Results work (in additional to all other charges). Process Results has sought to recover that amount from Surefil.

### The PROSYS claims

PROSYS is a material supply company whose principals are the same as the principals of Process Results, but whose ownership interests are different percentages between the two companies.

In connection with the Surefil project at Danvers, Surefil entered into a contract with PROSYS pursuant to which PROSYS agreed to provide various materials to the project which were incorporated in and continue to be part of the project. PROSYS delivered materials at an agreed price of $163,528.26; was paid $70,639.53; leaving an unpaid amount of $92,563.54.

As is the case with Process Results, Surefil has otherwise wholly failed and refused to pay amounts owed by it in connection with its contract with PROSYS and the project. When it was clear PROSYS was not going to be paid, PROSYS held some equipment and, to the extent

possible, returned it for a refund, reducing the total amount owed by Surefil to $80,851.91, together with damages for Surefil's failure to pay the contract amount.

As a result of Surefil's failure to pay the contract amount, PROSYS was required to obtain a loan in order to pay its suppliers for materials supplied. As of April of 2009, PROSYS had paid interest on that loan of $16,735.50. In addition, PROSYS claimed damages, calculated at a standard interest rate in the industry of 1.5% per month, in the amount of $41,240.34.

### The PROSYS and Process Results Liens

When Surefil and Surefil Properties failed to pay PROSYS and Process Results for the improvements they had provided to the Surefil and Surefil Properties real property, PROSYS and Process Results perfected construction liens against the real property and the improvements located thereon. Those liens remain pending and attached to the real property described in attached Exhibit B.

As set forth below, those liens have attached to the entire interest of Surefil and Surefil Properties and have priority over all other interests in that real property.

### The Kent County Circuit Court litigation.

PROSYS and Process Results provided their work, materials and services to Surefil and Surefil Properties beginning in late 2005 and into 2006. Both companies recorded construction liens in 2006. Still, no payment, of any amount, was forthcoming from Surefil or Surefil Properties. In July of 2007, PROSYS and Process Results instituted an action in the Circuit Court for the County of Kent entitled *PROSYS, LLC, a Michigan limited liability company and Process Results, Inc., a Michigan corporation v. Surefil, LLC, a Michigan limited liability company, Surefil Properties, LLC, a Michigan limited liability company, and The Huntington National Bank,* Kent County Circuit Court Case No. 07-07828-CK. The case was assigned to the

Honorable James R. Redford.  As more fully set forth below, the case remained pending from its initial filing date through the date Surefil and Surefil Properties instituted these bankruptcy proceedings.

Soon after the case was initiated, the law firm of Rhoades, McKee filed an appearance for, and thereafter represented, Surefil, Surefil Properties and Huntington National Bank ("Huntington") until the law firm of Rhoades McKee withdrew from its representation of those parties in approximately May of 2008.  Thereafter, the law firm of Barnes & Thornburg appeared as counsel for Surefil, Surefil Properties and Huntington, until it withdrew from its representation of those parties.  Thereafter, the law firm of Schenk & Boncher appeared for Surefil and Surefil Properties and the law firm of Warner, Norcross & Judd entered an appearance on behalf of Huntington.

### The complexity of the Kent County Circuit Court litigation

On the technical and factual side, the litigation between Process Results and PROSYS on the one hand and Surefil, Surefil Properties and Huntington on the other contains numerous technical issues.  Among other things, at issue in the case are issues relating to facilities engineering which includes the providing of engineering expertise related to civil site work, architectural, structural, electrical (power, lighting and communications), and mechanical (plumbing and heating, ventilating and air conditioning (HVAC)), and other related facilities engineering disciplines.  These issues relate to the design and construction/renovation of the facility itself.

At the same time, the core of the case involves process engineering which is work associated with a process which takes place within a facility.  In the case of Surefil and Surefil Properties, those parties required process engineering services because they wanted to construct

a mixing and bottling facility in an existing warehouse in Kentwood, Michigan. In process engineering, consideration must be given to the nature, size and types of vessels, tanks, mix tanks, holding tanks, water tanks, raw material storage tanks, etc. needed; the size, types and lengths of pipes needed (stainless steel versus PVC, etc.), as well as the related electrical and computerized control systems for the facility. In addition, in the case of the Surefil Properties facility, considerations related to process water and multiple levels of water purity were also involved. Likewise, engineering consideration had to be given to material handling, raw material storage, mixing, and heating and cooling of materials which would be processed in the facility.

The pending case also involves issues of construction, construction and engineering scheduling, construction administration, and the effects of various interferences and impacts initiated by Surefil and Surefil Properties during the course of Process Results and PROSYS' attempts to perform their work.

Aside from the engineering, construction, scheduling and administration issues in the case, there are numerous issues concerning the contracts between the parties and performance.

## Discovery in the Kent County Circuit Court case

Discovery in the Kent County Circuit Court case was initiated by all parties in 2007, soon after the case was filed. That discovery continued into February of 2009.

During the course of discovery, Surefil and Surefil Properties repeatedly pointed out that they had produced over 13,000 documents to the Plaintiffs, PROSYS and Process Results. Likewise, Process Results and PROSYS produced several thousand documents.

Beyond the documents produced by the parties themselves, pursuant to subpoenas and other requests for production, third parties, which included the MEDC, MDE Corp. (mechanical contractor), Kleyn Electric (electrical subcontractor), Kentwood Plumbing (a plumbing

contractor), Ebels Construction (general contractor), Perceptive Controls, Inc. (engineering firm), Siemens (water processing company), and others produced documents and files related to the construction of the Surefil/Surefil Properties facility.

During the course of discovery, numerous depositions were also taken, including those of Kevin Bingel and Johann Emilsson (Process Results and PROSYS), Bill Hunt (Surefil and Surefil Properties), Dee Lockhart-Topp (former Surefil employee), Anne Armstrong (quality control director for Surefil), Bret Ebels (general contractor, Ebels Construction), and Mike Tracy (Surefil engineering consultant/designated expert).

### Determinations concerning PROSYS and Process Results' construction liens during the course of the Kent County Circuit Court proceedings

As a result of discovery and other investigation, it was determined prior to trial that the PROSYS and Process Results liens had attached to the entire interest of Surefil and Surefil Properties in the real property and improvements located thereon which were the subject of the liens.  (Copies of PROSYS and Process Results liens, together with Proofs of Service, are attached hereto as Exhibits C and D, respectively) It was also determined that those liens had priority over all other interests claimed in the property, including those of Surefil, Surefil Properties and Huntington.  Stipulated Orders granting Process Results and PROSYS' motions for partial summary disposition with respect to the priority and attachment of their construction liens were entered by the court on February 7, 2009.  Copies of those Orders are attached as Exhibits E and F.

### Trial in the Kent County Circuit Court

The trial of PROSYS and Process Results' claims against Surefil, Surefil Properties and Huntington was scheduled to and did begin before Judge Redford on April 13, 2009.  The case was tried to the court on the following dates:

April 13, 2009
April 14, 2009
April 15, 2009
April 16, 2009
April 17, 2009
April 20, 2009
April 21, 2009
April 24, 2009

More than once, testimony continued late into the evening.  On April 24, 2009, Surefil and Surefil Properties indicated they had two witnesses left to call:  Rod Koning, a representative of Perceptive Controls, Inc., an engineering firm, and Surefil and Surefil Properties' expert, Michael Tracy.  At that point, the parties agreed that the remainder of the testimony in the case, Mr. Koning, Mr. Tracy, and Process Results and PROSYS' rebuttal witnesses, including experts, if any, would all be presented by way of de bene esse deposition.  Therefore, the presentation of testimony before the court, other than by videotape, was concluded.

### Videotape presentation of testimony

Subsequently, the parties agreed to dates for the videotaped de bene esse depositions of Rod Koning, Surefil and Surefil Properties' expert, Michael Tracy, and PROSYS and Process Results' rebuttal expert.

Mr. Koning's de bene esse video deposition was taken on June 1, 2009 in Grand Rapids and was concluded.  Thereafter, Surefil and Surefil Properties began the video deposition of their expert, Michael Tracy, on June 4, 2009 in Grand Rapids.  When they did not complete their direct examination on that date, the examination was continued on Friday, June 5, 2009.  The direct examination ended in the afternoon on that date and cross-examination began.  When a request was made for an adjournment before the cross-examination was completed, it was agreed that the cross-examination would continue on the following Friday, June 12, 2009 and that Process Results and PROSYS' expert's de bene deposition would also be taken on the same date.

At that point, all that remained to complete the testimony in the trial was the completion of the cross-examination of Surefil and Surefil Properties expert and any redirect, and the taking of the de bene deposition of Process Results and PROSYS' expert (with the direct examination estimated to be 1-1/2 to 2 hours, maximum), and any rebuttal witness, if any.  In short, the trial was virtually completed and all of the expenses of presentation of witnesses and experts had been incurred.

### The bankruptcy filings by Surefil and Surefil Properties

When Surefil and Surefil Properties requested an adjournment of the de bene esse deposition of their expert on June 5, 2009, with only a couple of hours of testimony left in the entire trial, there was no mention by Surefil or Surefil Properties of the impending filing for bankruptcy by both Surefil and Surefil Properties.  However, on June 8, 2009, both initiated these bankruptcy proceedings.

### The expenses of the litigation completed to date

When Schenk & Boncher took over as the third attorneys for Surefil and Surefil Properties in connection with the Kent County Circuit Court litigation, Surefil and Surefil Properties asserted that they had already paid attorney fees, alone, in excess of $360,000 in connection with the Kent County Circuit Court litigation.  Thereafter, on various occasions, Surefil and Surefil Properties asserted that their fees had increased to over $500,000.

During the course of the trial, it was acknowledged that Surefil and Surefil Properties were expending over $600 per hour in attorney fees.

Beyond the attorney fees purportedly incurred by Surefil and Surefil Properties, their designated expert, Michael Tracy, charges, according to the materials provided by him, at the rate of $275 per hour.  Whether Mr. Tracy charges more for trial time, is unknown.  In any event,

Surefil and Surefil Properties had Mr. Tracy present, in the courtroom, during every minute of every day during the course of the trial in the Kent County Circuit Court case. The charges for that time alone by Mr. Tracy can easily be calculated given the fact that the bench trial took place on April 13, 14, 15, 16, 17, 20, 21 and 24, 2009. It is completely unknown at this time how much time Mr. Tracy spent/billed for outside of the courtroom during the trial period. However, he spent an additional two days in a de bene esse deposition being examined on direct by Surefil and Surefil Properties' attorney for the majority of those two days and then on cross-examination.

PROSYS and Process Results have also expended a considerable sum preparing for and prosecuting their claims against Surefil, Surefil Properties and Huntington. At this time, PROSYS and Process Results have already expended over $360,000 in connection with the Kent County Circuit Court litigation.

## The bankruptcy proceedings

In connection with the Surefil and Surefil Properties' bankruptcies, PROSYS and Process Results seek to enforce the claims which are the subject of the Kent County Circuit Court action, including the enforcement of their first secured interest in the real property and improvements located thereon, more commonly known as the Surefil and Surefil Properties facility on Danvers in Kentwood, Michigan. The claims of PROSYS and Process Results have been the subject of extensive litigation since 2007 and the subject of a trial which is within less than a few hours of completion, thereafter awaiting only the decision of the circuit court judge.

## The Cash Collateral Order and Stipulation

During the Chapter 11 proceeding, Debtors and their secured lender, Huntington National Bank, have entered into stipulations authorizing use of cash collateral. Paragraph 6 of the initial

Stipulation Authorizing Use of Cash Collateral and Granting Adequate Protection filed on June 16, 2009 (Doc No. 14) (the "Cash Collateral Stipulation") contains an acknowledgment by the Debtors that:

> "Bank's security interest in the Prepetition Collateral is valid, perfected, first in priority and unavoidable (the Danvers Drive Mortgage is subject to construction liens filed by Prosys, LLC and Process Results, Inc. The validity and amounts of the construction liens have not yet been determined. …)"

The Cash Collateral Stipulation does not indicate how the Debtors propose to resolve the construction lien issue and the Debtors have not, upon information and belief, filed a plan or other pleading seeking to resolve validity and amounts of the construction lien claims.

## ARGUMENT

**A.    Relief from the automatic stay is appropriate to permit continuation of a pending lawsuit.**

Section 362(d) of the Bankruptcy Code provides, on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . :

> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if –
>
> (A) the debtor does not have equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

"Cause" for relief from the stay is not defined in the Bankruptcy Code, but it is well-established that it is determined on a case-by-case basis, taking into account all of the circumstances of each case. *See e.g., Laguna Assocs. Ltd. Partnership v. Aenta Casualty & Surety Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734, 737-38 (6th Cir. 1994) (internal citations omitted).

The Second Circuit has adopted a 12-factor test to determine whether to lift the stay or to allow pending litigation to proceed: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy estate; (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and balance of harms. *In re Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)* 907 F.2d 1280, 1282 (2nd Cir. 1990); *In re Continental Airlines, Inc.* 152 B.R. 420 (D. Del. 1993).

Modification of the stay is appropriate where it will promote judicial economy by resolving all claims in a single proceeding. *In Re Pro Football Weekly, Inc.*, 60 Bankr. 824, 826 (N.D. Ill. 1986), *citing In Re Bach Laundry Machine Co.*, 37 Bankr. 564, 566 (Bankr. N.D. Oh. 1984); *Matter of McGraw*, 18 Bankr. 140 (Bankr. W.D. Wis. 1982). *See also Newpower*, 233 F.3d 922 (6th Cir. 2000) (cause existed for relief from the automatic stay to allow embezzlement victims to continue pre-petition state court action to trace stolen funds).

For the reasons set forth below, the Second Circuit's 12-factor test weighs heavily in favor of lifting the stay to permit the Kent County Circuit action to conclude.

**1.    If the pending lawsuit is allowed to continue, no great prejudice will occur to either the bankrupt estate or the debtor from continuation of the civil suit.**

PROSYS, Process Results, Surefil and Surefil Properties (and, for that matter, Huntington), have litigated the dispute between them concerning PROSYS and Process Results' claims and liens since 2007.

In the Kent County Circuit Court action, all of the foregoing parties completed discovery after more than one and one-half years; produced and/or obtained tens of thousands of documents; took numerous depositions; and issued and enforced numerous subpoenas. Thereafter, as scheduled, the parties all presented witnesses, including experts, and thereafter completed a bench trial except for a few hours of remaining testimony which was to be concluded by de bene esse deposition (estimated two to eight hours of testimony).

After two to eight hours of testimony in the Kent County Circuit Court case, all that remains is for the parties to present closing briefs and for the circuit court judge to render an opinion.

Surefil and Surefil Properties have already claimed they have spent over one-half million dollars in attorney fees litigating the case in Kent County Circuit Court. That does not even take into account the tens of thousands of dollars they have apparently paid their expert to not only prepare and testify, but to sit through every minute of the bench trial to date. Likewise, PROSYS and Process Results have spent enormous sums prosecuting their claims.

Based upon the foregoing, it could not conceivably be any great prejudice to the bankruptcy estate to continue the civil suit and conclude it, with only a few hours of testimony and the writing of briefs. Conversely, if the entire lawsuit starts over in this forum, the resulting expenditures in attorney fees, expert fees, and other costs are obvious.

2.    **The hardship to Process Results and PROSYS by maintenance
of the stay considerably outweighs the hardship of the debtor.**

If the court allows the civil action in Kent County Circuit Court to go forward and
conclude, each party will expend a few more hours in attorney fees (two to eight hours in
depositions and the cost to prepare closing briefs). Process Results and PROSYS have already
spent several hundred thousand dollars pursuing their claims against Surefil and Surefil
Properties. Process Results and PROSYS should not be required to duplicate the attorney fees,
costs and expenses they have already incurred in order to retry nearly the entire case in this
forum.

There is no hardship to Surefil and Surefil Properties which would result from the
continuation of the civil action in the Kent County Circuit Court. In fact, the estates of the
Debtors, Surefil and Surefil Properties, would greatly benefit from a conclusion of the Kent
County Circuit Court proceedings. As acknowledged by the Debtors in the Cash Collateral
Stipulation, the validity and amount of the construction lien claims have not been resolved. In
order for the Debtors to emerge from Chapter 11 and make distributions to creditors – or in order
for a subsequently appointed Chapter 7 trustee to dispose of property and make distributions to
creditors -- the validity and amount of the construction lien claims will need to be resolved.
Accordingly, a resolution of the Kent County Circuit Court action is necessary to  the
administration of the Debtors' estates under any scenario.

If the Kent County Circuit Court proceedings are not allowed to go forward, in order to
determine the rights of PROSYS and Process Results as secured creditors in this action, the
entire case would have to be retried.

Beyond all of the foregoing, pursuant to the Michigan Construction Lien Act, MCLA
§570.1101 *et seq.*, as a successful lien claimant, Process Results and PROSYS are entitled to

have their attorney fees added to their lien claim and would be entitled to recover those attorney fees from Surefil and Surefil Properties through a foreclosure action and sale of the Surefil/Surefil Properties facility. Doubling those costs and attorney fees would not be an efficient use of the assets of the bankruptcy estates of Surefil and Surefil Properties.

### 3. PROSYS and Process Results, as creditors, have a probability of prevailing on the merits of their case.

Process Results' contract required it to be paid over $600,000, not including the amount owed to it as a result of Surefil breaching its contract and failing to provide an option for a 4.5% interest in Surefil. When that amount is added, the total amount increases by $150,000. At this point, Process Results has been paid a mere $50,000 on its total contract; Surefil and Surefil Properties have a plant which has been operating since the time the construction was still ongoing; and that plant has been in operation (as established by the testimony elicited at trial in the Kent County Circuit Court) since early 2006.

Likewise, the testimony retained in the record in the Kent County Circuit Court case establishes that the materials provided by PROSYS were provided by PROSYS and were installed and/or delivered to the Surefil/Surefil Properties facility during the course of the project.[1] Despite that fact, PROSYS has not been paid for the equipment it supplied which is installed in the facility.

Process Results and PROSYS also have a high probability of prevailing on the merits of their foreclosure claims. Surefil, Surefil Properties and their other primary secured creditor, Huntington, have all previously stipulated that Process Results and PROSYS' liens have priority

---

[1] There are four control panels which were specially made for the project which continue to be held by PROSYS after being delivered to the project and having payment refused by Surefil and Surefil Properties.

over their interests in the real property and improvements thereon and have attached to the real property and improvements thereon which are the subject of the liens.

        **4.    Modification of the stay will promote judicial economy**.

Modification of the stay to allow completion of the Kent County Circuit Court action will promote judicial economy by resolving all claims in a single proceeding and by reducing the costs to the court in this forum, and the enormous costs which will be incurred by the debtors, Surefil and Surefil Properties, as well as PROSYS and Process Results if the parties are required to relitigate, in their entirety, the Process Results and PROSYS claims.

As previously set forth, hundreds of thousands of dollars have been spent by Process Results, PROSYS, Surefil and Surefil Properties (and unknown additional amounts by Huntington) to litigate the claims between them to near conclusion. With two to eight hours of testimony, and the filing of closing briefs, remaining, it would be extremely ineffective and costly to begin all of the proceedings again in this court.

## CONCLUSION AND REQUEST FOR RELIEF

Surefil and Surefil Properties have already indicated in the course of these bankruptcy proceedings that they are contesting, and intend to continue to contest, the claims of Process Results and PROSYS. If PROSYS, Process Results, Surefil and Surefil Properties are required to litigate those claims in this forum, history has already established that the cost for those proceedings will exceed hundreds of thousands of dollars. However, if relief from the stay is granted to allow the parties to conclude the circuit court litigation in the Kent County Circuit court, a few more hours of attorney time and expense will need to be expended, but nothing of the magnitude of the costs which will be incurred in this forum if the proceedings are started again.

Likewise, it would be inequitable, and an inefficient use of judicial resources, if PROSYS and Process Results are required to "start over" with the trial of their claims against Surefil and Surefil Properties, including their claims for foreclosure and breach of contract.

Requiring the parties to complete the circuit court litigation will save the bankruptcy estates of Surefil and Surefil Properties an enormous amount in attorney fees and costs, as established by the historical costs incurred in the circuit court action. In addition, because PROSYS and Process Results are entitled to recover attorney fees as successful lien claimants, the amount of attorney fees and costs for which the bankruptcy estates of Surefil and Surefil Properties will become responsible would double if the parties are required to relitigate the claims in this forum.

WHEREFORE, Process Results and PROSYS respectfully request that this Court grant their Motion for Relief from the Automatic Stay and order Surefil and Surefil Properties to complete the litigation of the Kent County Circuit Court action and order that the results of that action become binding in these proceedings.

Dated:  September 16, 2009

/s/ Jason W. Bank
Mark M. Cunningham (P38408)
Jason W. Bank (P54447)
**KERR, RUSSELL AND WEBER, PLC**
Attorneys for PROSYS, LLC and
PROCESS RESULTS, INC.
500 Woodward Avenue, Suite 2500
Detroit, MI  48226-3406
313-961-0200; 313-963-7099 (facsimile)
mmc@krwlaw.com
jwb@krwlaw.com