IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Grand Rapids Division

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| SUREFIL, L.L.C. | ) | Case No.  11 |
| | ) | |
| Debtor | ) | Chapter 09-06914-jrh |
| | ) | |
| ACMA USA, Inc. | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUREFIL, L.L.C.,  Debtor | ) | |
| | ) | |
| Respondent | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

ACMA USA, Inc., ("ACMA"), by counsel, under 11 U.S.C. § 362, Fed. R. Bankr. P.

4001 and 9014 and Local Rule 4001-1. moves for relief from the automatic stay against the

Debtor Surefil, L.L.C.  and as cause states:

1.    This Court exercises jurisdiction over the subject matter of this controversy under

11 U.S.C. § 362  and 28 U.S.C. § 1334.

2.    This is a core proceeding under 28 U.S.C. § 157(b)(2) and a contested matter

under Fed. R. Bankr. P. 9014.

Parties

3.    ACMA is a Virginia corporation with principal place of business of 501

Southlake Boulevard, Richmond, VA 23236-3078, in Chesterfield County, Virginia. ACMA is in

the business, among other things, of selling and servicing machines that bottle and cap health

care products such as shampoos and body washes.

4.    Surefil, L.L.C. is the debtor in this case.

5.     Among the products sold and serviced by ACMA was a certain ACMA M05 28/12 – 150 Monobloc filler and capper machine, serial number 1132 (the "ACMA Machine"). In early October, 2006, ACMA and Surefil contracted for ACMA to sell and Surefil to purchase the ACMA Machine. The ACMA Machine was delivered to Surefil on March 30, 2007 and within 3 weeks thereafter Surefil commenced the use of the machine and continues to use the Machine through the time of filing of this motion.

5.     A dispute arose between ACMA and Surefil regarding the ACMA Machine. In summary, as of January, 2008 ACMA maintained that the Machine met all contractual requirements and Surefil therefor was indebted to ACMA for deferred portions of the purchase price of the ACMA Machine and for installation and service performed regarding the Machine in total sum of approximately $733,174.28. Surefil, in contrast, maintained that ACMA had breached the contract and that Surefil as a result owed ACMA nothing; instead, Surefil maintained that ACMA owed Surefil damages of $31,500,000.

6.     As a result of this dispute, ACMA sued Surefil in the United States District Court for the Eastern District of Virginia, Richmond Division, Civil No. 3:08-cv-0071, on January 28, 2008 (the "Virginia Litigation"), the Hon. Henry E. Hudson, United States District Judge, presiding, and Surefil subsequently filed a counterclaim against ACMA. True copies of the complaint, Surefil's answer and Surefil's counterclaim filed in the Virginia Litigation (without exhibits) are attached as Exhibits A, B and C, respectively. These and all other pleadings and orders in this case are published to the Internet and are available to this Court at the PACER web site for the United States District Court for the Eastern District of Virginia at Internet URL *https://ecf.vaed.uscourts.gov/cgi-bin/login.pl*. A true copy of the docket of the Virginia Litigation (the "Docket") is attached as Exhibit D. After a three day trial held November 19-21, 2008, the

2

jury returned a verdict in favor of ACMA for $733,174.28 and the District Court entered judgment in favor of ACMA and against Surefil consistent with the jury's verdict on December 1, 2008, Exhibit E.

7.      Prior to trial and during the pendency of the Virginia Litigation, on September 5, 2008, Surefil, by its litigation counsel, wrote ACMA, c/o its litigation counsel, the letter attached hereto as Exhibit F. In this letter, among other things, Surefil as buyer rejected its purchase of the Machine from ACMA under Article 2 of the Uniform Commercial Code. Surefil also revoked any acceptance of the ACMA Machine. The letter closed with the request that ACMA "Please provide instructions regarding ACMA's plan to retrieve the Machine" and that "Surefil will work constructively with ACMA to effectuate the return of the Machine."

8.      The parties in the Virginia Litigation agreed that Michigan law applied to the sale of the ACMA Machine by ACMA and the purchase of the Machine by Surefil. Article 2 of the Michigan Uniform Commercial Code provides, MCL 440.2401(4), as follows:

> A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".

9.      As provided by Michigan law, then, "by operation of law" the act of Surefil's rejection of the purchase of the Machine "revest[ed] title to the goods in the seller." Such rejection, "whether or not justified," revested title to the Machine in seller ACMA as of the time of rejection.

10.      Under the Uniform Commercial Code there is no provision for the change of title of a good revested in the Seller under MCL 440.2401(4) to return title to the buyer upon the buyer's change of mind, loss of a lawsuit, payment of all or any of the sums owed the seller, or

upon any other basis or circumstance. Simply stated, the buyer having made its choice to reject the goods in question, "whether or not justified" such rejection "by operation of law" automatically and irrevocably vests title to the goods in the seller.

11.     Surefil's statement in Exhibit F that it would "work constructively with ACMA to effectuate the return of the Machine" was false.

12.     Following its rejection of the Machine, Surefil repeatedly refused ACMA's requests to coordinate the return of the Machine or to return the Machine. As a result, ACMA requested leave to file an Amended Complaint in the Virginia Litigation adding, among other things, a count of conversion because of Surefil's refusal to return the Machine and because the rejection of the Machine by Surefil revested title in ACMA "by operation of law," yet Surefil continued to withhold the Machine from ACMA and to use the Machine.

13.     Surefil opposed ACMA's motion for leave to file an amended complaint on grounds, among others, that Surefil's rejection of the machine did not vest title of the machine in ACMA and, therefore, a complaint for conversion was not proper because Surefil retained title to the Machine notwithstanding Surefil's rejection of the Machine.

14.     On November 14, 2008 the United States District Court for the Eastern District of Virginia conducted a final pre-trial conference in the Virginia Litigation. During the course of that conference the District Court held that Surefil's rejection of the Machine vested title thereto in ACMA as seller in the following language (Transcript of Final Pretrial Conference at 5, lines 3-8, attached Exhibit G):

> 3  And, secondly, although the law is less than
> 4  crystal clear, the Court is of the opinion that whether
> 5  or not it's a justifiable rejection or revocation of
> 6  acceptance, either way, the title under Michigan law
> 7  passes to the seller, so therefore that motion will be

8  denied and there is a triable issue there.

15.     Following trial and prior to submission of the case to the jury, the District Court dismissed ACMA's claim for conversion on grounds unrelated to the title to the machine.

16.     On November 21, 2008 the jury returned a verdict in favor of ACMA, on ACMA's complaint and on Surefil's counterclaim. Among other things, the jury found that Surefil did not validly reject its purchase of the machine or revoke its acceptance. On December 1, 2008 the District Court entered judgment in favor of ACMA on the verdict.

17.     After the entry of the verdict in favor of ACMA, on December 12, 2008 as Docket # 136, Surefil filed a Motion to Alter, Amend or Clarify the Judgment, requesting the United States district Court "to issue a ruling to make it clear that, by virtue of the Court's Orders and the jury's verdict in this case, there has been no ruling that ACMA has title to the Machine." Exhibit H.

18.     Surefil also filed a memorandum in support of this relief, Docket #137 (Exhibit I). In that memorandum, notwithstanding the November 14, 2008 decision of the District Court made per the above transcript excerpt, Surefil asserted that "Surefil is aware of no ruling by this Court finding that ACMA has title to and/or owns the Machine." Exhibit I at 2. Surefil's memorandum also noted ACMA's December 10, 2008 letter asserting ACMA's title to the Machine per the November 14 District Court decision and demanding certain relief, which Surefil refused.

19.     The District Court never addressed the merits of Surefil's motion to, in effect, overturn (or, to use Surefil's language, "clarify") its November 14 decision on title to the ACMA Machine because, on December 16, 2008, Surefil surrendered the point when it withdrew its

5

motion, Docket #141, Exhibit J. On December 18, 2008, Docket #142, the District Court authorized the withdrawal of Surefil's motion. Exhibit K.

20.     Surefil having withdrawn its request for relief as to the issue of title to the Machine, the District Court's determination that ACMA held title to the Machine as a result of Surefil's rejection of the Machine became final. Although Surefil subsequently filed a memorandum requesting the District Court to set aside the judgment in favor of ACMA and other post-trial relief, (Docket # 148) (Exhibit L), in that memorandum Surefil never addressed the District Court's decision on title to the Machine. The final order in the case was entered March 18, 2009; no party appealed. The District Court's November 14, 2009 decision – that title to the ACMA Machine vested in ACMA as a matter of law upon Surefil's rejection of the Machine – therefore became final.

21.     All sums due ACMA under the judgment have been paid in full.

22.     Since the District Court's ruling that title was vested in ACMA by reason of Surefil's rejection of the Machine, ACMA on numerous occasions has requested and demanded that Surefil cease withholding ACMA's machine from ACMA and that Surefil return the Machine, or at least allow ACMA access to recover the Machine. Surefil has refused all such requests and demands.

23.     Shortly after the commencement of this case ACMA made another request, this time to Surefil's bankruptcy counsel, Exhibit M (email cover letter) and Exhibit N (formal letter to counsel and correspondence history). There was no reply although Surefil's bankruptcy counsel did add ACMA USA to the service list in this case.

24.     As a result of all of the foregoing, Surefil has no ownership of and therefore no equity in the ACMA Machine.

6

25.     According to numerous statements and testimony of Surefil CEO William B.

Hunt, the ACMA Machine does not function and has little or no use or value to Surefil and

therefore is not necessary to an effective reorganization. Examples of Surefil's derogatory

comments about the ACMA Machine abound and include, by way of illustration only and not

limitation, the following excerpt from the testimony of CEO Hunt in the Virginia Litigation

during Surefil's case in chief (Exhibit O, the entirety of Hunt's testimony on direct), when Hunt

was asked about the value of the ACMA Machine to Surefil.

At transcript page 113:

                18   A Well, I mean, the answer to the question on value
                19   of the machine is it doesn't work, it doesn't conform,
                20   it doesn't do what it's supposed to do, and it's got
                21   all this other very expensive equipment around it. So
                22   it's a negative. I mean, it has nowhere near the value
                23   that we were expecting. It doesn't produce a product
                24   it's supposed to produce, it doesn't give us the
                25   revenue it's supposed to give, it generates high scrap[.]

At transcript page 114:

                1   when certain heads don't fill and certain cappers don't
                2   cap, and we have difficulty with things being oriented.
                3   So that, and, you know, it just -- it's just a
                4   boat anchor for us. It's a very bad situation. Its
                5   value is quite low relative to the expectations. It's
                6   below its break-even value, so to run it is to always
                7   feel pain financially.

26.     As a result, in addition to Surefil's lack of equity in the Machine, since, per

Hunt's testimony regarding the Machine "it's just a boat anchor for us . . . to run it is always to

feel pain financially," the Machine is not necessary to an effective reorganization of Surefil.

27.     Notwithstanding (a) the November 14, 2008 decision of the District Court that

ACMA holds title to the Machine, (b) ACMA's demands for the return of the Machine and that

7

Surefil not use the Machine, and (c) Surefil's sworn testimony characterizing the Machine as a non-functioning "boat anchor," Surefil continues to use ACMA's Machine in its Chapter 11 case, refuses to recognize ACMA's ownership of such Machine and refuses to seek judicial authorization for their continued conduct.

COUNT I

28.     The allegations of paragraphs 1-27 are repleaded.

29.     ACMA lacks adequate protection for its interest in the ACMA Machine and cause exists to terminate the automatic stay to allow ACMA to exercise its rights with respect thereto.

COUNT II

30.     The allegations of paragraphs 1-27 are repleaded.

31.     In the alternative, Surefil has no equity in the ACMA Machine and the same is not necessary for an effective reorganization of the Debtor.

WHEREFORE, premises considered, ACMA USA, Inc., by counsel, prays that the Court grant relief from the automatic stay so that ACMA USA may recover the ACMA Machine by self help or otherwise under applicable nonbankruptcy law, to include but not limited to seeking declaratory and other relief from the United States District Court for the Eastern District of Virginia regarding the interpretation and enforcement of that Court's rulings as to the title to the ACMA Machine, and that ACMA USA have such other relief as is proper. If and to the extent ACMA USA recovers any money judgment against Surefil, L.L.C. on account of such relief (as distinct from relief related to the physical recovery of the Machine), ACMA USA agrees to seek leave from this Court before enforcing such money judgment and further requests that the additional ten-day stay under FRBP 4001(e) be waived.

8

ACMA USA, INC.


By: */s/Michael D. Almassian*
    Michael D. Almassian
    Keller & Almassian PLC
    2810 East Beltline Lane
    Grand Rapids, MI 49525
    (616) 364-2100

    Of Counsel:

    W. R. Baldwin, III, VSB #16988
    Marchant, Honey & Baldwin, LLP
    5600 Grove Avenue
    Richmond, VA  23226
    Voice:  (804) 285-3888
    Fax:  (804) 285-7779
    Counsel for ACMA USA, Inc.

9