UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SUREFIL, LLC,                                             Case No. HG 09-06914

    Debtor.
_____/

SUREFIL PROPERTIES, LLC,                                  Case No. HG 09-06916

    Debtor.                                              Chapter 11
                                                          Hon. Jeffrey R. Hughes
_____/

**MEMORANDUM IN OPPOSITION TO
MOTION FOR RELIEF FROM AUTOMATIC STAY**

For the reasons set forth in this Memorandum, The Huntington National Bank ("**Huntington**") opposes the Motion for Relief From Automatic Stay filed by ACMA USA, Inc. ("**ACMA**") on October 16, 2009, in which ACMA moves for relief from the automatic stay with respect to a machine ("**Surefil Machine**") that ACMA sold to Debtor Surefil, L.L.C. ("**Surefil**") and for which ACMA has been paid in full.

**INTRODUCTION**

On February 17, 2006, Surefil L.L.C. ("**Surefil**") obtained loans from The Huntington National Bank ("**Huntington**").  Surefil granted Huntington a security interest in all of Surefil's present and future assets, including equipment, to secure all indebtedness and obligations that Surefil then and in the future owed to Huntington.  On February 17, 2006, Huntington filed, in the office of the Michigan Secretary of State, a financing statement naming Surefil as debtor and Huntington as secured party, which perfected Huntington's security interest.

1

1721285-3

In October of 2006, ACMA agreed to sell, and Surefil agreed to buy, the machine that is the subject of ACMA's Motion ("**Surefil Machine**").  ACMA delivered the machine to Surefil on March 30, 2007.  Surefil claimed that the Surefil Machine was defective and therefore withheld payment of the purchase price.[*]

ACMA sued Surefil in the federal court in Richmond, Virginia, seeking to recover the purchase price.  The jury returned a verdict in favor of ACMA in the amount of $733,174.28, and the judge entered judgment on the verdict.  Surefil paid the $733,174.28 in full.

End of story?  Of course.  Seller sells machine to Buyer.  Buyer claims the machine is defective.  Seller sues Buyer for the price.  Buyer loses.  Buyer pays the judgment in full.  Everyone goes home.

But apparently this is *not* the end of the story.  Incredibly, even though Surefil has paid for the machine in full, ACMA claims that Surefil must now return the machine to ACMA!  It is absurd, but that is precisely what ACMA is asking this Court to do.  ACMA claims that the Uniform Commercial Code permits such an absurd and unfair result.  By a letter dated September 5, 2008, to ACMA, Surefil rejected the Surefil Machine and, alternatively, revoked its acceptance of it.  ACMA claims that, as a result of this rejection or revocation, title to the Surefil Machine "revested" in ACMA under UCC § 2-401(4), which provides as follows:

> (4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller.  Such revesting occurs by operation of law and is not a "sale".

---

[*] On January 15, 2009, Surefil sold the Surefil Machine to Huntington, at a price of $594,767.67, and Huntington leased it back to Surefil for a term of 60 months, with the rental being based upon an acquisition cost of $733,174.28.  Surefil and Huntington agreed that the lease constituted an operating lease, with Huntington retaining title to the Surefil Machine, subject to "Liens created by" Surefil, which would include the security interest that Surefil granted to Huntington on February 17, 2006.

2

ACMA further claims that the result of this "revesting" is that Surefil is obligated to return the Surefil Machine to ACMA, even though Surefil has paid to ACMA the full purchase price. ACMA is wrong. But even if ACMA's odd interpretation of the UCC is deemed to be correct, Huntington's security interest in the Surefil Machine takes priority over whatever interest in it ACMA holds.

**A.     TITLE TO THE SUREFIL MACHINE DID NOT REVEST IN ACMA**

ACMA'S interpretation of UCC Section 2-401(4) would give ACMA a double recovery. ACMA has already received from Surefil the full purchase price of the Surefil Machine. ACMA now wants the Surefil Machine itself.

*1.     The language of §2-401(4) does not support ACMA's position.*

Nothing in § 2-401(4) suggests that such a result is either required or permitted. To the contrary, the reference in the statute to a "refusal by the buyer to receive or retain the goods" clearly indicates that it applies where the buyer refused delivery or refuses to continue to hold the goods. Similarly, the references to "rejection" and "revocation of acceptance" clearly indicate that the section applies only where the buyer does not want the goods and has not paid for them. Here, none of those situations exists. Surefil (1) has possession of the Surefil Machine, (2) wants to keep it and (3) has fully paid for it.

*2.     ACMA's position violates a fundamental goal of the Uniform Commercial Code.*

ACMA's interpretation of the statute is not only unsupported by its provisions but also violates one of the fundamental goals of the Uniform Commercial Code. UCC section 1-106(1) (MCL § 440.1106(1)) provides:

> The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . .

As a result of the jury verdict, the judgment on it and Surefil's payment of it in full, ACMA is "in as good a position as if [Surefil] had fully performed . . . ."  ACMA sold the Surefil Machine to Surefil, and Surefil has paid ACMA the full amount of the purchase price.  If this Court were to now give the Machine to ACMA, that would be a clear and gross violation of the important goal of the UCC set forth in section 1-106(1).

> 3. ***ACMA's position is contrary to that of the jury and the court in the Richmond, Virginia case.***

The judge and the jury in the Richmond, Virginia, District Court that ruled against Surefil on whether the Machine was defective understood and applied this concept.

The Verdict Form stated, in pertinent part, as follows:

### Complaint Counts I and III

> As to Plaintiff ACMA USA, Inc.'s claim for breach of contract by Defendant Surefil, LLC, for failure to pay the second and third installments due under the contract, as alleged in Counts I and III of the Complaint and as described in Instructions 57 and 74, we the Jury find in favor of (check one):
>
> **Note:  If you find that Surefil, LLC has either (1) validly and properly rejected the machine or (2) validly and properly revoked it acceptance of the machine, i.e. if you find for Surefil, LLC on Count IX of the Counterclaim (see below), you cannot find for ACMA USA, Inc. on Counts I and III of the Complaint**.
>
> [✓] PLAINTIFF ACMA USA, INC.
>
> [  ] DEFENDANT SUREFIL, LLC

The references in the Verdict Form to rejection and revocation of acceptance clearly recognize that ACMA was not entitled both to money damages and to the Machine.  The jury

4

was told that if it found that Surefil "either (1) validly and properly rejected the machine or (2) validly and properly revoked its acceptance of the machine . . ," then the jury could not award damages to ACMA. That is, the jury was told that it could not award a double recovery to ACMA. Rather, ACMA was entitled to only one satisfaction.

### 4. *If ACMA is awarded the Surefil Machine, then ACMA should be required to refund the purchase price to Surefil.*

If this Court were to order Surefil to deliver the Surefil Machine to ACMA, then ACMA would have received a double recovery – the price of the Surefil Machine and the Surefil Machine itself – and Surefil would have paid for a machine that it never received.

As stated above, this would constitute an enormous wrong against Surefil. The only remedy for that wrong would be to require ACMA to pay over to Surefil the purchase price of the Surefil Machine along with all other amounts that it has been required to pay to ACMA in connection with this transaction.

Does it make sense to require such a payment? Of course not. But if ACMA is allowed to prevail on its Motion – by requiring Surefil to turn over the Surefil Machine to ACMA, then requiring ACMA to refund the purchase price to Surefil would be necessary to give each party that to which it is entitled.

**B.    EVEN IF TITLE TO THE SUREFIL MACHINE REVESTED IN ACMA, THE SUREFIL MACHINE IS SUBJECT TO HUNTINGTON'S PERFECTED, FIRST-PRIORITY SECURITY INTEREST, WHICH ATTACHED UPON DELIVERY OF THE SUREFIL MACHINE TO SUREFIL, AND, FOR THAT REASON ALONE, ACMA IS NOT ENTITLED TO POSSESSION OF THE SUREFIL MACHINE.**

As stated above, on February 17, 2006, Surefil executed and delivered to Huntington a Security Agreement, under which Surefil granted to Huntington a security interest

in, among other things, all equipment then owned or acquired in the future, to secure all present and future indebtedness owing by Surefil to Huntington. On February 17, 2006, Huntington perfected its security interest by filing with the Michigan Secretary of State a UCC financing statement naming Surefil as debtor and Huntington as secured party and describing the collateral as essentially all assets of Surefil, including all equipment (such as the Surefil Machine) that Surefil then owned and acquired in the future.

ACMA delivered the Surefil Machine to Surefil on March 30, 2007. Accordingly, at that time, Surefil obtained rights in the Surefil Machine, and its security interest attached and became enforceable against Surefil. See MCL§440.9203. Accordingly, Huntington's security interest in the Surefil Machine has priority over any interest that ACMA holds in it.

## CONCLUSION

ACMA's Motion is a brazen attempt to recover twice for the same loss. ACMA's loss resulted from Surefil's withholding of the purchase price of the Surefil Machine. ACMA's recovery for the loss was its obtaining a judgment in its favor for the unpaid balance of the purchase price and Surefil's payment of the judgment in full.

ACMA now wants to have a second recovery for its loss by having this Court order Surefil to give the Surefil Machine to ACMA.

Neither UCC §2-401(4) nor any other provision of Michigan law permits such a double recovery, and this Court should not allow it.

Even if Surefil had not paid for the Surefil Machine and even if title to it had "revested" in ACMA, any interest of ACMA in the Surefil Machine would be and is subject and subordinate

to Huntington's perfected, first-priority security interest in the Surefil Machine, and for that reason alone ACMA has no right to possession of the Surefil Machine.

ACMA's motion should be denied.

Respectfully submitted,

/s/ Robert H. Skilton
Robert H. Skilton (P20550)

/s/ James H. Breay
James H. Breay (P11151)

Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503
Phone:  616-752-2000
Facsimile: 616-222-2500

Counsel to The Huntington National Bank
