IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
Grand Rapids Division

| | |
|---|---|
| In Re: ) | |
| ) | |
| SUREFIL, L.L.C. ) | Case No. 09-06914-jrh |
|     Debtor ) | |
| ) | |
| _____/ ) | Chapter 11 |
| ) | |
| ACMA USA, INC. ) | Ad. Pro. No. |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SUREFIL, L.L.C., and HUNTINGTON ) | |
| NATIONAL BANK ) | |
| ) | |
|     Defendants. ) | |
| _____/ ) | |

## COMPLAINT

ACMA USA, Inc., ("ACMA"), by counsel, for its Complaint against Surefil, LLC ("Surefil") and Huntington National Bank ("Huntington") states as follows:

### JURISDICTION

1.  This Court exercises jurisdiction over the subject matter of this controversy under 28 U.S.C. § 1334, Bankruptcy Rule 7001 and 28 U.S.C. §2201.

2.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

### PARTIES

3.  ACMA is a Virginia corporation with principal place of business of 501 Southlake Boulevard, Richmond, VA 23236-3078, in Chesterfield County, Virginia. ACMA is in the business, among other things, of selling and servicing machines that bottle and cap health care products such as shampoos and body washes.

4.  Surefil, L.L.C. is the debtor in this case.

5.  Huntington National Bank is a banking institution that claims to own the property at issue in this adversary proceeding.

## FACTS

6.  Among the products sold and serviced by ACMA was a certain ACMA M05 28/12 – 150 Monobloc filler and capper machine, serial number 1132 (the "ACMA Machine"). In early October, 2006, ACMA and Surefil contracted for ACMA to sell and Surefil to purchase the ACMA Machine. The ACMA Machine was delivered to Surefil on March 30, 2007 and within 3 weeks thereafter Surefil commenced the use of the machine and continues to use the Machine through the time of filing of this motion.

7.  A dispute arose between ACMA and Surefil regarding the ACMA Machine. As of January, 2008, ACMA maintained that the Machine met all contractual requirements and Surefil therefor was indebted to ACMA for deferred portions of the purchase price of the ACMA Machine and for installation and service performed regarding the Machine in total sum of approximately $733,174.28. Surefil, in contrast, maintained that ACMA had breached the contract and that Surefil as a result owed ACMA nothing; instead, Surefil maintained that ACMA owed Surefil damages of $31,500,000.

8.  As a result of this dispute, ACMA sued Surefil in the United States District Court for the Eastern District of Virginia, Richmond Division, Civil No. 3:08-cv-0071, on January 28, 2008 (the "Virginia Litigation"), the Hon. Henry E. Hudson, United States District Judge, presiding, and Surefil subsequently filed a counterclaim against ACMA. True copies of the complaint, Surefil's answer and Surefil's counterclaim filed in the Virginia Litigation (without exhibits) are attached as Exhibits A, B and C, respectively. A true copy of the docket of the

Virginia Litigation (the "Docket") is attached as Exhibit D. After a three day trial held November 19-21, 2008, the jury returned a verdict in favor of ACMA for $733,174.28 and the District Court entered judgment in favor of ACMA and against Surefil consistent with the jury's verdict on December 1, 2008, Exhibit E.

       9.     Prior to trial and during the pendency of the Virginia Litigation, on September 5, 2008, Surefil, by its litigation counsel, wrote ACMA, c/o its litigation counsel, the letter attached hereto as Exhibit F. In this letter, Surefil as buyer rejected its purchase of the Machine from ACMA under Article 2 of the Uniform Commercial Code. Surefil also revoked any acceptance of the ACMA Machine. The letter closed with the request that ACMA "Please provide instructions regarding ACMA's plan to retrieve the Machine" and that "Surefil will work constructively with ACMA to effectuate the return of the Machine."

      10.    The parties in the Virginia Litigation agreed that Michigan law applied to the sale of the ACMA Machine by ACMA and the purchase of the Machine by Surefil.

      11.    As provided by Michigan law, the act of Surefil's rejection of the purchase of the Machine "revest[ed] title to the goods in the seller." Such rejection, "whether or not justified," revested title to the Machine in seller ACMA as of the time of rejection.

      12.    Under the Uniform Commercial Code there is no provision for the change of title of a good revested in the Seller under MCL 440.2401(4) to return title to the buyer upon the buyer's change of mind, loss of a lawsuit, payment of all or any of the sums owed the seller, or upon any other basis or circumstance. Simply stated, Surefil having made its choice to reject the ACMA Machine, "whether or not justified" such rejection "by operation of law" automatically and irrevocably vests title to the ACMA Machine in the seller.

13. Surefil's statement in Exhibit F that it would "work constructively with ACMA to effectuate the return of the Machine" was false.

14. Following its rejection of the Machine, Surefil repeatedly refused ACMA's requests to coordinate the return of the Machine or to return the Machine. As a result, ACMA requested leave to file an Amended Complaint in the Virginia Litigation adding, among other things, a count of conversion because of Surefil's refusal to return the Machine and because the rejection of the Machine by Surefil revested title in ACMA "by operation of law," yet Surefil continued to withhold the Machine from ACMA and to use the Machine.

15. Surefil opposed ACMA's motion for leave to file an amended complaint on grounds, among others, that Surefil's rejection of the machine did not vest title of the machine in ACMA and, therefore, a complaint for conversion was not proper because Surefil retained title to the Machine notwithstanding Surefil's rejection of the Machine.

16. On November 14, 2008 the United States District Court for the Eastern District of Virginia conducted a final pre-trial conference in the Virginia Litigation. During the course of that conference the District Court held that Surefil's rejection of the Machine vested title thereto in ACMA as seller in the following language (Transcript of Final Pretrial Conference at 5, lines 3-8, attached Exhibit G):

> 3 And, secondly, although the law is less than
> 4 crystal clear, the Court is of the opinion that whether
> 5 or not it's a justifiable rejection or revocation of
> 6 acceptance, either way, the title under Michigan law
> 7 passes to the seller, so therefore that motion will be
> 8 denied and there is a triable issue there.

17. Following trial and prior to submission of the case to the jury, the District Court dismissed ACMA's claim for conversion on grounds unrelated to the title to the machine.

4

18. On November 21, 2008, the jury returned a verdict in favor of ACMA, on ACMA's complaint and on Surefil's counterclaim. Among other things, the jury found that Surefil did not validly reject its purchase of the machine or revoke its acceptance. On December 1, 2008 the District Court entered judgment in favor of ACMA on the verdict.

19. After the entry of the verdict in favor of ACMA, on December 12, 2008 as Docket # 136, Surefil filed a Motion to Alter, Amend or Clarify the Judgment, requesting the United States District Court "to issue a ruling to make it clear that, by virtue of the Court's Orders and the jury's verdict in this case, there has been no ruling that ACMA has title to the Machine." Exhibit H.

20. Surefil also filed a memorandum in support of this relief, Docket #137 (Exhibit I). In that memorandum, notwithstanding the November 14, 2008 decision of the District Court made per the above transcript excerpt, Surefil asserted that "Surefil is aware of no ruling by this Court finding that ACMA has title to and/or owns the Machine." Exhibit I at 2. Surefil's memorandum also noted ACMA's December 10, 2008 letter asserting ACMA's title to the Machine per the November 14 District Court decision and demanding certain relief, which Surefil refused.

21. The District Court never addressed the merits of Surefil's motion to, in effect, overturn (or, to use Surefil's language, "clarify") its November 14 decision on title to the ACMA Machine because, on December 16, 2008, Surefil surrendered the point when it withdrew its motion, Docket #141, Exhibit J. On December 18, 2008, Docket #142, the District Court authorized the withdrawal of Surefil's motion. Exhibit K.

22. Surefil having withdrawn its request for relief as to the issue of title to the Machine, the District Court's determination that ACMA held title to the Machine as a result of

5

Surefil's rejection of the Machine became final. Although Surefil subsequently filed a memorandum requesting the District Court to set aside the judgment in favor of ACMA and other post-trial relief, (Docket # 148) (Exhibit L), in that memorandum Surefil never addressed the District Court's decision on title to the Machine. The final order in the case was entered March 18, 2009; no party appealed. The District Court's November 14, 2009 decision – that title to the ACMA Machine vested in ACMA as a matter of law upon Surefil's rejection of the Machine – therefore became final.

23. All sums due ACMA under the judgment have been paid in full.

24. Since the District Court's ruling that title was vested in ACMA by reason of Surefil's rejection of the Machine, ACMA on numerous occasions has requested and demanded that Surefil cease withholding ACMA's machine from ACMA and that Surefil return the Machine, or at least allow ACMA access to recover the Machine. Surefil has refused all such requests and demands.

25. Shortly after the commencement of this case ACMA made another request, this time to Surefil's bankruptcy counsel, Exhibit M (email cover letter) and Exhibit N (formal letter to counsel and correspondence history). There was no reply although Surefil's bankruptcy counsel did add ACMA USA to the service list in this case.

26. On October 21, 2009, ACMA USA filed a Motion for Relief from the Automatic Stay. In response to ACMA USA's Motion, Huntington National Bank claimed that it is the owner of the ACMA Machine as a result of a purported sale and lease-back transaction that allegedly occurred in January 2009. ACMA USA disputes the effectiveness of the purported sale and lease-back. As a result of all of the foregoing, Surefil and Huntington have no ownership of and therefore no equity in the ACMA Machine.

6

27. During the initial hearing on ACMA USA's Motion for Relief from the Automatic Stay this Court determined that the issues raised in ACMA USA's Motion should be brought in the context of an adversary proceeding.

28. According to numerous statements and testimony of Surefil CEO William B. Hunt, the ACMA Machine does not function and has little or no use or value to Surefil and therefore is not necessary to an effective reorganization.

## COUNT I
### (Declaratory Relief- Title to ACMA Machine)

29. The allegations of paragraphs 1-28 are repleaded.

30. By operation of law, title to the ACMA Machine vested with ACMA USA upon Surefil's rejection, whether or not such rejection was justified.

31. Surefil willfully and wrongfully retained possession of the ACMA Machine despite Plaintiff's attempts to exercise its rightful ownership of the machine.

32. According to Surefil, the ACMA Machine does not function and has little or no use or value to Surefil and therefore is not necessary to an effective reorganization.

33. The issue of title to the ACMA Machine has been decided in the Virginia Litigation and the doctrines of *res judicata* and/or *collateral estoppel* prevent Surefil and Huntington from contesting ownership of the ACMA Machine.

34. Huntington was aware of Surefil's rejection of the ACMA Machine and therefore Huntington's subsequent attempt to purchase the machine from Surefil did not effectively pass title to Huntington.

WHEREFORE, Plaintiff ACMA USA seeks a determination from this Court that ACMA USA is the true title holder of the ACMA Machine and declaring that ACMA USA may exercise

all rights consistent with its ownership of the Machine. Plaintiff further requests a determination that the doctrines of res judicata and/or collateral estoppels preclude Surefil and Huntington from contesting ACMA USA's ownership of the ACMA Machine. Plaintiff further requests all other relief deemed just by this Court.

## COUNT II
### (Common Law Conversion)

35. The allegations of paragraphs 1-34 are repleaded.

36. Upon Surefil's rejection of the ACMA Machine, ACMA USA held proper title to the machine and was entitled to its immediate possession.

37. Surefil wrongfully and willfully retained possession of and exerted control over the ACMA Machine in a manner inconsistent with ACMA USA's ownership rights and ACMA USA's demands for the return of the ACMA Machine.

38. Surefil's purported sale of the ACMA Machine to Huntington was an ineffective transfer given that Surefil did not posses proper title to the machine.

39. Huntington claims to have purchased or received title to the ACMA Machine and has exerted control over the ACMA Machine in a manner inconsistent with ACMA's ownership of the machine.

WHEREFORE, Plaintiff ACMA USA seeks a determination from this Court that Surefil and Huntington have converted the ACMA Machine and award ACMA USA damages for the loss of use, sale or lease of the ACMA Machine. Plaintiff further requests all other relief deemed just by this Court.

8

## COUNT III
### (Statutory Conversion)

40. The allegations of paragraphs 1-39 are repleaded.

41. Surefil's rejection of the ACMA Machine re-vested title to the machine in ACMA USA.

42. After Surefil's rejection, it wrongfully and willfully retained possession of the ACMA Machine with knowledge of ACMA USA's ownership rights and ACMA USA's demands for the return of the ACMA Machine in violation of M.C.L. 600.2919a (1)(a).

43. Huntington was aware of Surefil's rejection of the ACMA Machine and Huntington's purported purchase of the machine was done with knowledge that the ACMA Machine had been converted by Surefil.

44. Huntington's claimed ownership and control over the ACMA Machine violates M.C.L. 600.2919a (1)(b).

45. Huntington's purported purchase of the ACMA Machine was ineffective and did not transfer good title from Surefil to Huntington.

WHEREFORE, Plaintiff ACMA USA seeks a determination from this Court that Surefil and Huntington committed statutory conversion and award ACMA USA treble damages for the loss of use, sale or lease of the ACMA Machine and attorney fees. Plaintiff further requests all other relief deemed just by this Court.

## COUNT IV
### (Unjust Enrichment)

46. The allegations of paragraphs 1-45 are repleaded.

47. Surefil has improperly exerted dominion and control over the ACMA Machine since the date of Surefil's rejection and Surefil has received an unjust benefit from the ACMA

Machine thereby depriving ACMA USA of the right to benefit from its rightful ownership of the machine.

48.    Huntington has improperly exerted dominion and control over the ACMA Machine since the date of Huntington's purported purchase of the machine and Huntington has received an unjust benefit from the ACMA Machine thereby depriving ACMA USA of the right to benefit from its rightful ownership of the machine.

WHEREFORE, Plaintiff ACMA USA seeks damages from Surefil and Huntington for their unjust benefits received from wrongfully exerting dominion and control over the ACMA Machine. Plaintiff further requests all other relief deemed just by this Court.

ACMA USA, INC.

By: /s/Michael D. Almassian
Michael D. Almassian
Keller & Almassian PLC
2810 East Beltline Lane
Grand Rapids, MI 49525
(616) 364-2100

Of Counsel:

W. R. Baldwin, III, VSB #16988
Marchant, Honey & Baldwin, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3888
Fax: (804) 285-7779
Counsel for ACMA USA, Inc.