UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN
_____

In re
    SUREFIL, LLC,                                     Case No. 09-06914
                                                                     Chapter 11
            Debtor.                             Jointly Administered
_____

In re:

                                                                     Case No. HG 09-06916

SUREFIL PROPERTIES, LLC,

           Debtor.
_____

**DEBTORS' EMERGENCY MOTION TO CONTINUE
USE OF CASH COLLATERAL TO EMPLOY CHIEF
RESTRUCTURING MANAGER AND
APPROVAL OF CARVE-OUT FOR PROFESSIONAL FEES**

Surefil, LLC and Surefil Properties, LLC (collectively, "**Debtor**"), by their attorneys, Nantz, Litowich, Smith, Girard & Hamilton, moves that this Court enter an Order Authorizing the Debtors' Use of Cash Collateral to Fund the "Budget", as defined herein, authorizing the employment of a Chief Restructuring Officer, and granting a Carve-Out for Professional Expenses. In support of this Motion, the Debtor states:

    1.    On June 8, 2009, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code and the Debtor has thereafter been acting as debtor in possession.

    2.    The Huntington National Bank ("**Bank**") is the major secured lender to the Debtor, having prepetition security interests in essentially all of the Debtors' assets and having been previously granted a post-petition security interest in essentially all of the Debtor in Possession's assets.

3. Debtors, Guarantor and the Bank are parties to a Stipulation Authorizing Continued Use of Cash Collateral and Granting Adequate Protection and Providing for a Sale Process (the "**November Stipulation**"), that was approved by order of the United States Bankruptcy Court dated November 30, 2009, and became a final order on December 8, 2009.

4. The Debtor has been investigating the possibility of a purchase of its assets and business as a going concern and has solicited offers from potentially interested purchasers (the "**Sale Process**").

5. The Bank has agreed, subject to the granting of the relief requested herein, to support, for a period of time it deems to be reasonable, the Debtors' efforts to pursue the Sale Process.

6. The Bank has agreed to allow the Debtor to use cash collateral for the purposes set forth above pursuant to a Budget ("**Budget**") to be agreed upon by the Bank and the CRM (as defined herein) and provided that the use of cash collateral is within the formula and subject to the rights and protections afforded the Bank as adequate protection under the November Stipulation as approved by the Court.

7. The Debtor has employed, and this Court has approved, Delta Equity Advisors, LLC ("**Delta**") to serve as financial advisors to the Debtor. The Debtor and the Bank have agreed that it would be appropriate for Delta to act as the Chief Restructuring Manager ("**CRM**") with powers to: (a) prepare the Budget that provides for the continuation of the operations of Debtor through the Sale Process (the Budget will include any requested carve-out for professionals, including Delta); (b) enforce compliance by Debtor of the Budget (for the avoidance of doubt, once the Budget has been approved by Delta

and the Bank, Delta alone will have the power to approve disbursements pursuant to the Budget subject to the limitations on use of cash collateral set forth herein); (c) consent to amendment of the Budget by Delta with the written consent of the Bank; (d) assume full responsibility of the Sale Process; and (e) negotiate for Debtor the terms of any sale agreement or, in the absence of a sale agreement acceptable to the Bank, to implement a plan for the orderly disposition of the Debtors' assets acceptable to the Bank and authorize counsel for Debtor to file the appropriate motions for approval of the sale or other disposition of the business assets of the Debtor.

8. There is no dispute that the value of the Debtors' prepetition and post-petition assets are less than the claim of the Bank.

9. The Bank and the Debtor agree that it is in their best interest and in the best interest of the estate that the Debtor is able to continue to retain the services of its current legal, accounting and financial consultants professionals, including Delta as the CRM (the "**Debtor Professionals**"). The Bank, therefore, has agreed that it will allow its collateral, or the proceeds thereof, to fund payments to the Debtor Professionals in the amounts set forth in the Budget as the same may be amended (the "**Carve-Out**"). The Carve-Out consists of the Bank's collateral proceeds (in the form of cash collateral). The Carve-Out is earmarked for payment of the Debtor Professionals and to the United States Trustee's quarterly fees and may not be used by the Debtor or the estate for any other purposes.

10. There are no understandings or agreements between any of the Debtor Professionals and the Bank with respect to the carve-out that would affect or impair the professionals' duties of loyalty to the Debtor.

WHEREFORE, the Debtor requests that this Court enter an Order authorizing the use of cash collateral in accordance with the Budget, authorizing the expansion of Debtor's

employment to serve as CRM, and approving the Carve-Out between the Debtor, the Debtor Professionals and the Bank as requested herein and grant such other and further relief as may be just or equitable.

Respectfully submitted,

**NANTZ, LITOWICH, SMITH, GIRARD & HAMILTON**
Attorneys for Debtors

Dated:  June 30, 2010				By:____*/s/ Harold E. Nelson*_____
						Harold E. Nelson  (P-27974)
					Business Address:
						2025 E. Beltline, S.E., Suite 600
						Grand Rapids, MI  49546
						(616) 977-0077

f:\data\hen\surefil llc\emergency motion 6-30-10.doc