UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

    Surefil, LLC,                               Case No. HG09-06914
                                                       Chapter 11
                                                       Honorable Jeffrey R. Hughes
                                                       Jointly Administered

                                         Debtor./

In re:

    Surefil Properties, LLC,                 Case No. HG09-06916
                                                       Chapter 11
                                                       Honorable Jeffrey R. Hughes
                                                       Jointly Administered

                                         Debtor./

UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE
FROM CHAPTER 11 TO CHAPTER 7

      Daniel M. McDermott, United States Trustee for Region 9, asks, pursuant to his authority under 11 U.S.C. Section 307 and 28 U.S.C. Section 586(a)(3), that the Court convert this case from Chapter 11 to Chapter 7 of the Bankruptcy Code, pursuant to 11 U.S.C. Section 1112(b), for cause, as set forth below:

### *I. General Allegations*

1. Surefil, LLC, the operating company, filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 8, 2009. Surefil Properties, LLC, which owns the real estate that is used by Surefil, LLC, also filed a petition for relief under Chapter 11 on June 8, 2009.

2. William B. Hunt is the managing member of both Surefil, LLC, and Surefil Properties, LLC. Mr. Hunt also owns 87.5% of the equity of each company.

3. On June 29, 2009, the Court entered orders in both cases (Case No. HG09-06916, Docket No. 29; Case No. HG09-06914, Docket No. 47) granting the debtors' motions for joint administration.

4. The United States Trustee has appointed an Official Committee of Unsecured Creditors. That Committee has not retained counsel.

### *II. The Debtors Have Failed to Timely File a Plan of Reorganization*

5. On September 4, 2009, the Court entered an order requiring the debtor to file a proposed plan of reorganization and disclosure statement by February 1, 2010.

6. The United States Trustee verbally agreed to extensions of that date, but upon information and belief, all agreed extensions have expired.

7. As of this date, the debtors have not filed a proposed plan of reorganization and disclosure statement.

### *III. The Debtors Apparently Cannot File a Confirmable Plan Based Upon Continued Operations*

8. Pursuant to Paragraph 9 of this Court's Definitive Order, entered in this case on June 9, 2009, and the United States Trustee's operating instructions, the debtor is required to file monthly financial reports with the United States Trustee.

9. The debtor's financial reports are current. According to those reports, as of May 31, 2010, the debtor had sustained losses of $671,441 since the date of filing. The debtor has made a profit in only two months since filing. In October, 2009, the debtor made a profit of $27,937; in December, 2009, the debtor made a profit of $7,199. As of May 31, 2010, the debtor had total unpaid post petition debts of $319,867, and cash on hand of $304,499. The debtor appears to be cash flowing through depreciation. In May, 2010, the debtor's sales and revenues fell to $610,572 for the month, the second lowest results since the date of filing.

10. Upon information and belief, the debtor would need to attain monthly sales of about $1.2 million or more and maintain such sales month after month in order to be able to fund a plan. According to the debtor's financial reports, the debtor has never attained that level of sales revenue since the filing of the Chapter 11 petitions.

11. Based upon the debtors' performance in Chapter 11, there is no reason to believe that the debtors can propose a feasible plan of reorganization based upon future operations.

### *III. The Debtors Apparently Cannot File a Confirmable Plan Based Upon A Sale of the Debtors*

12. As of the date of filing, Surefil Properties, LLC, the company that owns the real estate, owned land valued at $2.2 million, which was subject to a mortgage in the amount of $11.6 million held by Huntington National Bank and three construction liens. The mortgage and the construction liens totaled $12,791,155.30. Surefil Properties listed no personal property, no priority debts, and no unsecured debts. Mr. Hunt and Surefil, LLC were listed as the guarantors of the Huntington mortgage.

13. As of the date of filing, Surefil, LLC, listed no real property in its schedules. Surefil, LLC, did list $5.1 million in personal property, which allegedly was subject to the Huntington secured claim of $11.6 million. Surefil, LLC, listed no other secured creditors, no priority debts, and $7,652,029.75 in general unsecured debts. Surefil, LLC, filed an amended Schedule F on August 26, 2009 which reduced the total unsecured debts to $5,469,152.27.

14. The Court appointed Delta Equity Advisors, LLC, as financial advisors to the debtor on May 4, 2010. (Bankruptcy Court Docket No. 181.) The United States Trustee did not object to this appointment. (Bankruptcy Court Docket Note dated April 29, 2010.)

15. On June 30, 2010 the debtor filed an Emergency Motion for Use of Cash Collateral. (Bankruptcy Court Docket No. 208.) According to that motion, the role of Delta Equity was to be expanded to put Delta in charge of negotiating a sale of the

debtors' assets. The motion also mentioned a carve out to ensure that the professional fees would be paid.

16. At the hearing on the motion for use of cash collateral on July 7, 2010, the debtor indicated that it had already received some bids or expressions of interest. The amounts being offered appeared to be in the range of $3 to $4 million.

17. At the hearing of July 7, 2010, the Court asked for a redrafted motion, and the debtor withdrew the motion for use of cash collateral.

18. The debtor filed a motion to expand the duties of Delta Equity on July 9, 2010. (Bankruptcy Court Docket No. 215.) That motion again makes it clear that the debtors' intended course for the future is a sale of assets and operations. The motion also repeats the request for a carve out to pay professional fees, but preserves the right of the United States Trustee, among others, to object to a carve out.

19. Upon information and belief, a sale for anything less than $11.6 million will be insufficient to pay Huntington Bank in full, let alone administrative expenses, professional fees, and unsecured creditors, absent a carve out consented to by Huntington Bank.

20. There is no indication in the record that Huntington Bank has agreed to a carve out for the benefit of the unsecured creditors, or administrative creditors other than the professionals.

21. The requests for a carve out for professionals would appear to be a tacit

admission that the parties fear or anticipate a secondary insolvency in the event of a sale of the assets and operations.

22. Based upon the foregoing, it appears that the debtors' intended course is to pursue a sale that will be insufficient to pay Huntington Bank in full, that will not produce any return for the unsecured creditors, and which may leave administrative creditors, other than the professionals, unpaid.

### *IV. The Current Manager, Mr. Hunt, Has Multiple Conflicts of Interest*

23. As noted above, William B. Hunt is the managing member of both Surefil, LLC, and Surefil Properties, LLC.  Mr. Hunt also owns 87.5% of the equity of each company.

24. According to Surefil, LLC's response to question 10 of the amended statement of financial affairs (Case No. HG09-06914, Bankruptcy Court Docket No. 66, filed July 28, 2009), on or about October 31, 2008, Surefil, LLC purchased from Ascendia Brands, Inc., all right, title and interest in the "Lander" line of products, and Surefil then transferred the Lander brand to another entity, Grand Brands, which was owned by an insider of Surefil, LLC.  Surefil valued the property transferred at $400,000.

25. Upon information and belief, Surefil has produced, bottled, distributed and sold products for Grand Brands under the Lander brand under a license agreement. Grand Brands has no production facilities of its own and never has had such facilities. In

return, Surefil pays a licensing fee or royalty to Grand Brands.

26. Upon information and belief, Grand Brands is owned or controlled by either Mr. Hunt's wife or his daughter, or both.

27. Upon information and belief, Surefil, LLC, financed the transaction with Grand Brands so that Grand Brands was able to repay Surefil by offsetting the license fee or royalties until Surefil was paid in full.

28. According to Surefil, LLC's response to question 3(c) of the amended statement of financial affairs, prior to filing the Chapter 11 petition, Surefil paid $474,962.60 to Grand Brands, at least $35,961.53 to Mr. Hunt's wife, at least $245,406.62 to Mr. Hunt, and $564.38 to Mr. Hunt's daughter.

29. The United States Trustee does not yet know whether Grand Brands or the Lander brand of goods will be included in any prospective sale, and if so, whether Grand Brands or any other insider will receive compensation from any sale. In any event, an independent trustee should be appointed to examine all these transactions.

30. According to the amended Schedule F filed by Surefil, LLC on August 26, 2009 (case No. HG09-06914, Bankruptcy Court Docket No. 76, page 9) Mr. Hunt is owed two debts by Surefil, one debt of $225,000, and another debt of $1,096,095.60. Therefore, of the total unsecured debts of $5,469,152.27, about $1,321,095.60, or about 24%, is owed to Mr. Hunt. Again, an independent trustee should be appointed to review these claims before any unsecured creditors are paid.

31. As noted above, Mr. Hunt is listed as a guarantor of the Huntington mortgage.

32. Lastly, as the motion for use of cash collateral and the motion to expand the duties of Delta Equity candidly state, Mr. Hunt is affiliated with one of the possible bidders in any sale of the assets and operations of these debtors. That conflict of interest led the debtor and Huntington to attempt to divest Mr. Hunt of any control over the sale process.

33. The United States Trustee commends Mr. Hunt and counsel for their candor and honesty in disclosing this conflict. However, the United States Trustee does not agree with their suggested solution. Given the multiple conflicts of interest that Mr. Hunt has, the best solution would be to convert this case to one under Chapter 7 so that a Chapter 7 trustee may impartially conduct the sale, and review the transaction of Mr. Hunt and the other insiders with the debtors.

### V. Grounds For Relief

34. For all the above reasons, cause exists to convert this case to one under chapter 7 under 11 U.S.C. Section 1112(b), including but not limited to any one of the following:

   A. current management's multiple conflicts of interest;

   B. inability to propose a confirmable plan of reorganization;

   C. substantial loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

D. failure to comply with an order of the court; and

E. failure to file a disclosure statement and a plan under any time fixed by order of the court.

Therefore, the United States Trustee asks that the Court convert this case to one under Chapter 7 of the Bankruptcy Code under 11 U.S.C. Section 1112(b) for cause as set forth above, including but not limited to unreasonable delay by the debtor that is prejudicial to creditors and failure to propose a plan under 11 U.S.C. Section 1121 within any time fixed by the Court, or that the Court grant such relief as the Court may deem just.

    Respectfully submitted,
    DANIEL M. McDERMOTT
    United States Trustee
    Region 9

Date:_____   By:_____
    By: /s/ Michael V. Maggio
    Michael V. Maggio
    Trial Attorney
    Office of the United States Trustee
    United States Department of Justice
    The Ledyard Building, Second Floor
    125 Ottawa Avenue NW, Suite 200R
    Grand Rapids, Michigan 49503
    Tel: (616) 456-2002, ext. 114