UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re
    SUREFIL, LLC,                                Case No. 09-06914
                                                  Chapter 11
            Debtor.                        Jointly Administered

In re:
                                                  Case No. HG 09-06916
SUREFIL PROPERTIES, LLC,

            Debtor.

## DEBTORS' MOTION TO APPROVE SALE AND FOR OTHER RELATED RELIEF

Surefil, LLC and Surefil Properties, LLC, the Debtors and Debtors in Possession in this case (collectively, "**Debtor**"), by its attorneys, Nantz, Litowich, Smith, Girard & Hamilton, P.C., as its Motion to this Court for the entry of an Order Approving Sale and for Other Related Relief (the "**Motion**"), states:

### JURISDICTION

1.    This Court has jurisdiction over the Motion under 28 U.S.C. §§157 and 1334.

2.    This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (N) & (O).

3.    The authority upon which this Motion is based are §§105, 363, 365 and 1146(c) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Fed. R. Bankr. P. 6004 and L.B.R. 6004.

## BACKGROUND

4. On June 8, 2009 (the "**Petition Date**"), the Debtor filed Voluntary Petitions under Chapter 11 of the Bankruptcy Code and has been acting as Debtor in Possession since that date.

5. No Trustee or examiner has been appointed in this case.

6. An official committee of unsecured creditors has been appointed in this case (the "**Committee**").

7. Debtor Surefil, LLC ("**Surefil**") is a contract manufacturer of liquid fill plastic bottle consumer products, such as shampoo, conditioner, mouthwash, bubble bath, body wash and energy drinks.

8. Debtor Surefil Properties, LLC ("**Properties**") owns the real property on which Surefil's manufacturing facility is located and leases that real property to Surefil.

9. The Debtor employs approximately 70 workers.

10. The Debtor's major secured creditor, The Huntington National Bank ("**Bank**"), is a party to a Stipulation Authorizing Continued Use of Cash Collateral and Granting Adequate Protection and Providing for a Sale Process (the "**November Stipulation**") that was approved by Order of this Court dated November 30, 2009. As part of the November Stipulation, the Debtor was to investigate the feasibility of selling its operations as a going concern. Subsequently, the Debtor employed Delta Equity Advisors, LLC ("**Delta**") to advise the Debtor in evaluating and negotiating with respect to offers to purchase the business.

11. Since the November Stipulation, the Debtor engaged in discussions with several potential strategic and financial buyers of the Debtor's operations as a going

concern.

### RELIEF REQUESTED

12. The Debtor in this Motion requests that this Court enter an Order which:

   A. Approves a sale, pursuant to §363(b)&(f) of the Bankruptcy Code, of the Debtor's operating assets (the "**Assets**"), including, but not limited to, any and all avoidance rights regarding Grand Brands, LLC and/or Lander Intangibles Corporation, which Assets are more fully described in the Asset Purchase Agreement attached hereto as **Exhibit 1**.

   B. Authorizes a procedure for assumption and assignment of the Assigned Agreements, as defined in the Asset Purchase Agreement;

   C. Eliminates the 10 day stay contained in Fed. R. Bankr. P. 6004.

13. The Debtor's ability to preserve the going concern value of its business is dependent upon its ability to sell the Assets of its business as promptly as practicable.

14. The Debtor has received a "stalking horse" bid (the "**Stalking Horse Bid**") from Coryell Limited, LLC. The Stalking Horse Bid proposes to purchase the Assets pursuant to the terms and conditions of the Asset Purchase Agreement.

15. At the hearing on this Motion, other parties ("**Bidders**") may appear and submit bids for purchasing the Assets, provided:

   (i) Bidders agree to enter into an Asset Purchase Agreement in form acceptable to the Debtor, together with the Bidder's written undertaking to execute such agreement upon entry by the Court of an Order approving a sale of the Debtor's Assets to such bidder. The purchase agreement must clearly identify the purchase price and terms of

payment and clearly allocate the purchase price between the Debtor's Assets.

(ii) A commitment from the Bidder that, if such Bidder is deemed to have tendered the second best bid (the "**Backup Bid**"), that its bid is irrevocable until 15 days after the date the successful bidder is required to close the sale.

(iii) All bids shall be in increments of $50,000.

16. The determination of whether or not a potential bidder is a qualified bidder shall be determined by the Seller, after consultation with Delta and the Bank. In any event, no bidder will be deemed to be a qualified bidder if the terms of its bid are conditioned upon obtaining financing or its bid is conditioned upon the outcome of unperformed due diligence.

17. Upon conclusion of the auction process, the Debtor, after consultation with Delta and the Bank, shall review all bids received and, on the basis of such factors as the Debtor may determine to take into account, including factors affecting the financial and contractual terms of the bid and factors concerning the speed and certainty of consummation of the transactions contemplated by the bid. The Debtor, after consultation with Delta, shall identify the highest and otherwise best offer and the Backup Bid for the Assets.

18. Nothing in the sale procedures shall prevent or impair the right of any secured lender to bid pursuant to §363(k) of the Bankruptcy Code.

19. The sale of the Assets shall be on an "AS IS, WHERE IS" basis without any representations or warranties of any kind, nature or description by the Seller, their agents

or their estates, including any warranties of MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Each Bidder shall be deemed to acknowledge and represent that it did not rely upon any written or oral statements, representations, promises, warranties or guarantees whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets.

20. At the sale hearing, the Debtor shall present to the Court for approval, the successful bid and the Backup Bid for the Debtor's Assets. If, following the sale hearing, the successful bidder fails to consummate an approved sale because of a breach or other failure to perform on the part of the successful bidder, the Backup Bid shall be deemed to be the successful bid and the Debtor shall be authorized to effect such sale without further order of the Bankruptcy Court.

### ASSUMPTION AND ASSIGNMENT OF ASSIGNED AGREEMENTS

21. In order to expedite the ability of the successful bidder to consummate the sale, the Debtor will, after the conclusion of the sale, in writing, advise the non-debtor party to any unexpired leases or executory contracts which the successful bidder seeks to have assigned to it, which shall identify the unexpired lease or executory contract in question, state that the Debtor seeks to assume and assign such unexpired lease or executory contract, state the amount of any cure (the "**Cure Amount**") which the Debtor believes is necessary in order to assume such unexpired lease or executory contract pursuant to §365 of the Bankruptcy Code, and notify such party that unless it files a written objection with the Court and serves a copy on counsel for the Debtor, and the successful bidder by no later than 5:00 p.m. E.D.T. within seven (7) days after the date of the notice, the unexpired lease or executory contract in question may be assumed and assigned

pursuant to §365 of the Bankruptcy Code. It shall be the responsibility of the successful bidder to pay any Cure Amount and demonstrate adequate assurance of future performance.

22. At the sale hearing, the Debtor shall request the entry of an Order authorizing, but not requiring, the assumption and assignments of the Assigned Agreements to the purchaser of the Assets.

### APPLICABLE AUTHORITY

23. This Court has authority under §363 of the Bankruptcy Code to authorize the sale of substantially all of the Debtor's operating assets, provided that the Debtor has demonstrated a business justification or good business reason for such a sale. *In re Lionel Corp.*, 722 F.2d 1063, 1070-1071 (2nd Cir. 1983); *Stephens Industries, Inc. v McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Matter of Embrace Systems Corp.*, 178 B.R. 112, 124 (Bankr. W.D. Mich. 1995).

24. In this case, the Debtor does not have the financial resources or access to capital necessary to operate its business beyond August 31, 2010, on which date the Bank's consent to use of cash collateral terminates. In addition, the United States Trustee recently filed a Motion to convert this case, a copy of which was mailed to the entire matrix. That action created very strained relationships between the Debtor and many of its vendors and a general erosion of vendor support. The Debtor has determined, therefore, based upon its own business judgment that the most viable option for maximizing the value of its estate is through a prompt sale of the Assets.

25. The Debtor submits that the sale satisfies the requirements of §363(f) of the Bankruptcy Code, which authorizes a debtor in possession to sell property free and clear

of any lien, claim, or interest in such property if, among other things, the party holding such lien, claim or interest, consents to the sale. The Debtor believes that the Bank and Rush Creek Excavating and PROSYS/Process Results are the only entities holding liens on assets of the Debtor. The Debtor is reasonably confident that the Bank will support the concept of a sale as described herein, but reserves the right to credit bid or object to any such sale. The extent of the liens of Rush Creek Excavating and PROSYS/Process Results are in dispute in pending Kent County Circuit Court actions and, therefore, bona fide disputes exist with respect to the amounts, if any, of those secured claims, and, on information and belief, the amount of the purchase price allocated to the Debtors' real property will be sufficient to satisfy the maximum amount of the claims of Rush Creek Excavating and PROSYS/Process Results.

26. Authority exists for the Assumption and Assignment of Unexpired Leases or Executory Contracts as provided for in this Motion. Section 365(b)(1) provides that an unexpired lease or an executory contract may be assumed if the debtor cures any default or provides adequate assurance that it will cure such default, compensates or provides adequate assurance of compensation to the Non-Debtor Party for any actual pecuniary loss such party has suffered as a result of the default and provides adequate assurance of future performance under the lease or contract.

27. In determining whether the assumption of an executory contract or unexpired lease is in the best economic interest of the Debtor and its estate, the Court should apply a standard of the Debtor's "business judgment". *Sharon Steel Corp. v National Fuel Gas*, 872 F.2d, 36, 40 (3rd Cir. 1999); *Matter of Holly's, Inc.*, 140 B.R. 643, 680 (Bkrtcy. W.D. MI, 1992). In this case, a strong business justification exists for allowing

a potential purchaser of the Assets to have the Debtor assume and assign certain unexpired leases and executory contracts. Without the assignment of such leases and contracts, the value of the Debtor's Assets would be markedly diminished and, therefore, detrimental to the best interest of the Debtor's estate.

28. The "adequate assurance" required by §365, both for an assumption of an unexpired lease or executory contract and with respect to the assignment of such leases and contracts, may be provided by demonstrating the financial health of the proposed assignee, as well as its experience in the relevant industry. *See e.g. In re Bygraph, Inc.*, 56 B.R. 596, 605-606 (Bankr. S.D. N.Y. 1986). In order to become Qualified Bidders, the bidders must have demonstrated to the Debtor that they have sufficient financial resources to assume any assigned leases or contracts.

NANTZ, LITOWICH, SMITH, GIRARD & HAMILTON
Attorneys for Surefil, LLC and Surefil Properties, LLC

Dated: July 22, 2010       By:      */s/ Joseph A. Lucas*
                                      Joseph A. Lucas  (P-59595)
                                   Business Address:
                                      2025 E. Beltline, S.E., Suite 600
                                      Grand Rapids, MI  49546
                                      (616) 977-0077

f:\data\hen\surefil llc\motion to approve sale procedures 7-22-10.doc

# EXHIBIT 1
## TO
## DEBTOR'S MOTION TO APPROVE SALE AND FOR OTHER RELATED RELIEF