UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re

        SUREFIL, LLC,                         Case No. 09-06914

                                      Chapter 11

        Debtor.                   Jointly Administered

_____

In re:

                                        Case No. HG 09-06916

SUREFIL PROPERTIES, LLC,

        Debtor.

_____

## DEBTORS' REVISED MOTION TO APPROVE SALE
## AND FOR OTHER RELATED RELIEF

Surefil, LLC and Surefil Properties, LLC, the Debtors and Debtors in Possession in this case (collectively, "**Debtor**"), by its attorneys, Nantz, Litowich, Smith, Girard & Hamilton, P.C., as its Motion to this Court for the entry of an Order Approving Sale and for Other Related Relief (the "**Motion**"), states:

### JURISDICTION

1.     This Court has jurisdiction over the Motion under 28 U.S.C. §§157 and 1334.

2.     This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2) (A), (N) & (O).

3.     The authority upon which this Motion is based are §§105, 363, 365 and 1146(c) of Title 11 of the United States Code (the "**Bankruptcy Code**"), Fed. R. Bankr. P. 6004 and L.B.R. 6004.

<u>B<small>ACKGROUND</small></u>

4.      On June 8, 2009 (the "**Petition Date**"), the Debtor filed Voluntary Petitions under Chapter 11 of the Bankruptcy Code and has been acting as Debtor in Possession since that date.

5.      No Trustee or examiner has been appointed in this case.

6.      An official committee of unsecured creditors has been appointed in this case (the "**Committee**").

7.      Debtor Surefil, LLC ("**Surefil**") is a contract manufacturer of liquid fill plastic bottle consumer products, such as shampoo, conditioner, mouthwash, bubble bath, body wash and energy drinks.

8.      Debtor Surefil Properties, LLC ("**Properties**") owns the real property on which Surefil's manufacturing facility is located and leases that real property to Surefil.

9.      The Debtor employs approximately 70 workers.

10.     The Debtor's major secured creditor, The Huntington National Bank ("**Bank**"), is a party to a Stipulation Authorizing Continued Use of Cash Collateral and Granting Adequate Protection and Providing for a Sale Process (the "**November Stipulation**") that was approved by Order of this Court dated November 30, 2009.  As part of the November Stipulation, the Debtor was to investigate the feasibility of selling its operations as a going concern.  Subsequently, the Debtor employed Delta Equity Advisors, LLC ("**Delta**") to advise the Debtor in evaluating and negotiating with respect to offers to purchase the business.

11.     Since the November Stipulation, the Debtor engaged in discussions with several potential strategic and financial buyers of the Debtor's operations as a going

concern.

## RELIEF REQUESTED

12.     On July 22, 2010, the Debtors filed their Motion to Approve Sale and For Other Related Relief.  At the adjourned hearing on that Motion, the Motion was withdrawn and this Revised Motion to Approve Sale and For Other Related Relief has been filed in substitution of the prior Motion.

13.     The assets offered for sale consist of all assets of the Debtor of any nature whatsoever, including all right to the "Lander" brand for the United States (which shall be contributed to the Debtor at the closing of the sale) (the "**Assets**"); provided, however, the Assets do not include any claims or causes of action under Title 11, Chapter 5 of the United States Code.

14.     The Debtor in this Motion requests that this Court enter an Order which:

A.     Approves a sale, pursuant to §363(b)&(f) of the Bankruptcy Code, of the Debtor's Assets (as defined in this Motion);

B.     Provides that all liens, claims or encumbrances in the Assets, including all security interests of the Bank, shall attach to sale proceeds in the same rank and priority;

C.     Authorizes a procedure for assumption and assignment of the Assigned Agreements, as proposed in this Motion;

D.     Eliminates the 14 day stay contained in Fed. R. Bankr. P. 6004.

15.     The Debtor's ability to preserve the going concern value of its business is dependent upon its ability to sell the Assets of its business as promptly as practicable.

## SALE PROCEDURE

16.     All parties interested in making an offer to purchase the Assets ("**Bidders**") shall be entitled to conduct reasonable due diligence activities with respect to the Assets. All requests for due diligence information shall be directed to Delta.  The due diligence period shall expire at 5:00 p.m. (EDT) on August 25, 2010.

17.     All offers to purchase the Assets must, at a minimum, provide:

(a)     Payment of the purchase price in cash on the Closing Date;

(b)     That the closing of the sale will be within ten (10) days after the Order Approving the Sale is final and non-appealable;

(c)     An assumption of, and a commitment to pay, all Chapter 11 administrative expenses when due;

(d)     A commitment from the Bidder that, if such Bidder is deemed to have tendered the second best acceptable bid (the "**Backup Bid**"), that its bid is irrevocable until fifteen (15) days after the date the successful bidder is required to close the sale; and

(e)     The offer is subject to no conditions precedent or contingencies whatsoever, except for Court approval.

18.     Offers may be submitted to the Debtor, in care of its counsel, prior to the hearing to approve the sale (the "**Sale Hearing**").

19.     The determination as to whether or not an offer is acceptable shall be determined by the Debtor, after consultation with Delta and approval by the Bank.  Debtor and the Bank may require any Bidder to execute a confidentiality agreement customary for transactions of this type, in form and substance satisfactory to Debtor and Bank, and to

establish to their satisfaction its financial ability to perform its obligation under its offer.

20.    Offers are encouraged to be submitted prior to the Sale Hearing.  However, Bidders may appear at the Sale Hearing and submit offers at that time pursuant to the terms and conditions of this Motion.

21.    The first acceptable Offer (if any) received prior to the Sale Hearing may be accepted by the Debtor, after consultation with Delta and approval by the Bank, provisionally, subject to the receipt of higher and better offers and further subject to Court approval (the "**First Acceptable Offer**").  The Debtor reserves the right to seek, at the Sale Hearing, Court approval of a "break-up fee" for the benefit of the First Acceptable Offeror. Prospective bidders may request a copy of the First Acceptable Offer by contacting Debtor's counsel.

22.    Bidding increments with respect to the sale are as follows:

(a)    If there is a First Acceptable Offer, the next bid must be equal to the price contained in the First Acceptable Offer, plus any break-up fee approved by the Court, plus $50,000.  All other bids thereafter shall be in increments of $50,000; or

(b)    In the event there is no First Acceptable Offer, all bidding increments shall be in the amount of $50,000.

23.    The Debtor shall review all bids received and, on the basis of such factors as the Debtor may determine in consultation with Delta and the Bank, including, without limitation, the Bank's approval of a bid, the financial and contractual terms of each bid and factors concerning the speed, certainty of consummation of the transactions contemplated by each bid, identify the highest and otherwise best offer for the Assets.

The Debtor, after consultation with Delta and the Bank, reserves the right to accept

the First Acceptable Offer, dispense with and cancel the auction contemplated under this Motion, and seek approval of the First Acceptable Offer to negate further cost and expense and to maximize the value of the Assets.

24.    Nothing in the sale procedures or this Motion shall prevent or impair the right of any secured lender to bid pursuant to §363 of the Bankruptcy Code, including the right to object or withhold consent to any sale pursuant to §363(f) or to credit bid pursuant to §363k(k), and the Debtor, in consultation with Delta and with the Bank's consent, may make reasonable alterations or additions to the procedures set forth in this Motion and to any procedures announced at the auction, provided that such changes are not materially inconsistent with the terms as set forth in this Motion.

25.    The sale of the Assets shall be on an "AS IS, WHERE IS" basis without any representations or warranties of any kind, nature or description by the Seller, their agents or their estates, including any warranties of MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  Each Bidder shall be deemed to acknowledge and represent that it did not rely upon any written or oral statements, representations, promises, warranties or guarantees whatsoever, whether express or implied, by operation of law or otherwise, regarding the Assets.

26.    At the Sale Hearing, the Debtor shall present to the Court for approval, what it determined to be the highest and best offer, and the Backup Bid (if any).

27.    At the Closing, all sale proceeds shall be paid over to the Bank, with the exception that the Debtor shall retain $490,679 on account of the construction liens of PROSYS/Process Results.

<u>ASSUMPTION AND ASSIGNMENT OF ASSIGNED AGREEMENTS</u>

28.     In order to expedite the ability of the successful bidder to consummate the sale, the successful bidder will, within three (3) business days after the conclusion of the Sale Hearing, in writing, advise the Debtor of any unexpired leases or executory contracts it wishes the Debtor to assume and assign to the successful bidder (the "**Assigned Agreements**").  The Debtor will, in writing, advise the non-debtor party to any unexpired leases or executory contracts which the successful bidder seeks to have assigned to it, which shall identify the unexpired lease or executory contract in question, state that the Debtor seeks to assume and assign such unexpired lease or executory contract, state the amount of any cure (the "**Cure Amount**") which the Debtor believes is necessary in order to assume such unexpired lease or executory contract pursuant to §365 of the Bankruptcy Code, and notify such party that unless it files a written objection with the Court and serves a copy on counsel for the Debtor, and the successful bidder by no later than 5:00 p.m. E.D.T. within seven (7) days after the date of the notice, the unexpired lease or executory contract in question may be assumed and assigned pursuant to §365 of the Bankruptcy Code.  It shall be the responsibility of the successful bidder to pay any Cure Amount and demonstrate adequate assurance of future performance.

29.     At the Sale Hearing, the Debtor shall request the entry of an Order authorizing, but not requiring, the assumption and assignments of the Assigned Agreements to the purchaser of the Assets.

<u>APPLICABLE AUTHORITY</u>

30.     This Court has authority under §363 of the Bankruptcy Code to authorize the sale of substantially all of the Debtor's operating assets, provided that the Debtor has

demonstrated a business justification or good business reason for such a sale.  *In re Lionel Corp.*, 722 F.2d 1063, 1070-1071 (2nd Cir. 1983); *Stephens Industries, Inc. v McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Matter of Embrace Systems Corp.*, 178 B.R. 112, 124 (Bankr. W.D. Mich. 1995).

31.    In this case, the Debtor does not have the financial resources or access to capital necessary to operate its business beyond August 31, 2010, on which date the Bank's consent to use of cash collateral terminates (or such extended date the Bank may grant to accommodate a closing of the sale).  In addition, the United States Trustee recently filed a Motion to convert this case, a copy of which was mailed to the entire matrix.  That action created very strained relationships between the Debtor and many of its vendors and a general erosion of vendor support.  The Debtor has determined, therefore, based upon its own business judgment that the most viable option for maximizing the value of its estate is through a prompt sale of the Assets.

32.    The Debtor submits that the sale satisfies the requirements of §363(f) of the Bankruptcy Code, which authorizes a debtor in possession to sell property free and clear of any lien, claim, or interest in such property if, among other things, the party holding such lien, claim or interest, consents to the sale.  The Debtor believes that the Bank, Rush Creek Excavating and PROSYS/Process Results are the only entities holding liens on assets of the Debtor.  The Debtor is reasonably confident that the Bank will support the concept of a sale as described herein, but reserves the right to credit bid or object to any such sale. The extent of the liens of PROSYS/Process Results in the amount of the purchase price allocated to the Debtors' real property will be sufficient to satisfy the maximum amount of the claims of PROSYS/Process Results.  Any asserted construction lien by Rush Creek

Excavating is subject to *bona fide* disputed to its failure to file a Notice pursuant to 11 U.S.C. §546(b)(2) to preserve its claim of construction lien.

33.     Authority exists for the Assumption and Assignment of Unexpired Leases or Executory Contracts as provided for in this Motion.  Section 365(b)(1) provides that an unexpired lease or an executory contract may be assumed if the debtor cures any default or provides adequate assurance that it will cure such default, compensates or provides adequate assurance of compensation to the Non-Debtor Party for any actual pecuniary loss such party has suffered as a result of the default and provides adequate assurance of future performance under the lease or contract.

34.     In determining whether the assumption of an executory contract or unexpired lease is in the best economic interest of the Debtor and its estate, the Court should apply a standard of the Debtor's "business judgment".  *Sharon Steel Corp. v National Fuel Gas*, 872 F.2d, 36, 40 (3rd Cir. 1999); *Matter of Holly's, Inc.*, 140 B.R. 643, 680 (Bkrtcy. W.D. MI, 1992).  In this case, a strong business justification exists for allowing a potential purchaser of the Assets to have the Debtor assume and assign certain unexpired leases and executory contracts.  Without the assignment of such leases and contracts, the value of the Debtor's Assets would be markedly diminished and, therefore, detrimental to the best interest of the Debtor's estate.

35.     The "adequate assurance" required by §365, both for an assumption of an unexpired lease or executory contract and with respect to the assignment of such leases and contracts, may be provided by demonstrating the financial health of the proposed assignee, as well as its experience in the relevant industry.  *See e.g. In re Bygraph, Inc.*, 56 B.R. 596, 605-606 (Bankr. S.D. N.Y. 1986).  In order to become Qualified Bidders, the

Bidders must have demonstrated to the Debtor that they have sufficient financial resources

to assume any assigned leases or contracts.

Respectfully submitted,

**NANTZ, LITOWICH, SMITH, GIRARD & HAMILTON**
Attorneys for Surefil, LLC and Surefil
Properties, LLC

Dated:  August 18, 2010             By:____/s/ **Harold E. Nelson**_____
                                     Harold E. Nelson  (P-27974)
                                    Business Address:
                                        2025 E. Beltline, S.E., Suite 600
                                        Grand Rapids, MI  49546
                                        (616) 977-0077

f:\data\hen\surefil llc\motion (revised) to approve sale procedures 8-18-10.doc